· **Stephen W. HELDEN, Petitioner,**

v.

**Melvin R. LAIRD, Secretary of Defense, Stanley R. Resor, Secretary of the Army, and the Commanding Officer, Armed Forces Examining and Entrance Station, 39 Whitehall Street, New York, New York, Respondents.**

**No. 69 Civ. 3433.**

United States District Court
S. D. New York.

Dec. 11, 1969.

---

Paul G. Chevigny, New York City, for petitioner.

Robert M. Morgenthau, U.S. Atty. for the Southern District of New York, New York City, for respondents; Simon P. Gourdine, Asst. U.S. Atty., New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Stephen W. Helden petitions for a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his induction into, and present detention in, the United States Army violate his constitutional right to procedural due process. Petitioner alleges that Selective Service Local Board No. 59, in Syracuse, New York, failed to consider all the pertinent information submitted concerning his request for a II-A occupational deferment and refused to reopen his classification despite his presentation of a prima facie case for such a deferment.

It appears that in June 1968, petitioner, while still a college student classified as II-S, applied for service in the Peace Corps. While his application was pending, he was graduated from college and shortly thereafter reclassified I-A on August 13, 1968. Sometime later, the Peace Corps accepted his application, and petitioner notified the board in writing on October 29, 1968 that he had been accepted, advised that he had been ordered to report for training on December 1, 1968, and enclosed the Peace Corps' standard form (PC 243) requesting a II-A occupational deferment. The board's records show that the request was received on November 4, 1968 but was not placed in petitioner's file until eleven days later, on November 15, 1968. That day, November 15, 1968, happened to be the very day the board sent petitioner an order to report for induction on December 6, 1968. It developed that the board had met on November 12, 1968, prior to issuing the order, but because petitioner's letter was not yet in his file, it did not even see, much less consider, petitioner's request for a deferment.

Petitioner received the induction order on November 18, 1968, and on the following day personally appeared at the board and asked for an explanation. He was informed that he must report for induction as ordered since he was not yet officially in the Peace Corps.

Two days later, on November 20, 1968, the board received a request from the Peace Corps for cancellation of petitioner's induction order and reconsideration of his I-A classification. The same day, the chairman of the board replied in writing denying the Peace Corps' request because petitioner had not yet commenced training. The next day, the remaining members of the board concurred in the chairman's action.

Later the same day, petitioner delivered a letter to the board requesting a

special meeting to consider his application for an occupational deferment. The following day, the board notified petitioner that he was not entitled to such a special meeting because he had not commenced his Peace Corps service at the time the induction order was issued.

Petitioner applied to the United States District Court for the Northern District of New York for an order enjoining his induction. The application was denied for want of jurisdiction under § 10(b) (3) of the Military Selective Service Act of 1967.[1] The court did not, however, reach the merits.[2]

Basing its action on the original induction order of November 15, 1968, a transfer board in New York City reordered petitioner to report for induction on August 4, 1969 at Whitehall Street. Petitioner submitted to induction on August 4, and shortly thereafter filed this petition.

Petitioner claims that the induction order is void and his present detention illegal because the local board violated its own governing regulations and his right to procedural due process, first, by failing to consider his request for a reopening and reclassification prior to issuing the induction order and, second, by refusing to reopen his classification as required by 32 C.F.R. § 1625 after petitioner presented a prima facie case for a II-A deferment.

Since we find petitioner's first ground dispositive, it will be unnecessary to consider the second.

█ The regulations require the board to "receive and consider all information pertinent to the classification of the registrant."[3] After receipt of the information, the board is also required to reopen a classification if a registrant presents facts which, if true, would establish a right to a requested reclassification.[4] Failure to reopen after registrant presents a prima facie case for a requested deferment violates registrant's right to constitutional due process.[5] Obviously, before the board can determine whether reopening is necessary, it must at least consider the facts presented by registrant. Failure to consider the facts presented is, therefore, no less a violation of registrant's right to procedural due process than is a failure to reopen after presentation of a prima facie case for a requested deferment.[6]

█ Respondents argue, however, that petitioner was not denied due process because he was not "engaged in the activity" for which he requested an occupational deferment and, therefore, failed to present a prima facie case.[7] This is no answer to petitioner's uncontradicted claim that the board not only refused to reopen his classification, but also failed even to consider the facts presented in support of his request.

The board's failure to consider the facts was undoubtedly the inadvertent result of its failure to keep current files. We are mindful that local boards are all but swamped with a backlog of paper work due to evermounting applications for deferment as registrants become more aware of their rights. The mere fact, however, that local boards are understaffed and overworked does not relieve them of their responsibility to keep accurate, complete and current records to assure fairness in the selection of draftees.[8] Surely a young man should not be forced to sacrifice his freedom

1. 50 U.S.C.App. § 560(b) (3).

2. Helden v. Masters, 68 Civ. 405, N.D. N.Y., December 20, 1968.

3. 32 C.F.R. § 1622(c).

4. 32 C.F.R. § 1625.2.

5. United States v. Vincelli, 215 F.2d 210, 213 (2d Cir. 1954); United States ex rel. Vaccarino v. Officer of the Day, S.D.N.Y., 305 F.Supp. 732, October 28, 1969; United States v. Burlich, 257 F. Supp. 906, 911 (S.D.N.Y.1966).

6. United States v. Walsh, 279 F.Supp. 115, 120–121 (D.C.Mass.1968).

7. 32 C.F.R. § 1622.2.

8. 32 C.F.R. §§ 1602.21, 1602.22.

and risk his life simply because vital papers affecting his deferment are left unfiled for eleven days. Clerical delay is too frivolous an explanation for so grave a forfeiture.

Here, neglect of a plain responsibility resulted in the board's failure to consider pertinent facts presented by a registrant in support of a deferment. Failure to consider such facts, in itself, constituted a denial of procedural due process whether or not those facts would have required a reopening of petitioner's classification.[9]

Finally, respondents argue that the board's failure to consider the facts is immaterial because, in any event, petitioner failed to present a prima facie case for an occupational deferment. This argument rests on the fact that petitioner was not actually engaged in the deferrable occupation when he presented the pertinent facts, because he had not yet been inducted into the Peace Corps.

True, the regulations do provide that a registrant requesting an occupational deferment must be engaged in the deferrable occupation.[10] Draft boards, however, function without uniform standards or clear criteria interpreting the governing regulations. Much is left to unguided discretion and varying interpretation. Each of the 4,000 local boards has wide latitude in establishing deferment policies. As a result, the system of occupational deferments is particularly a hodgepodge, as noted last year by the National Security Council. It is not surprising, therefore, that there is no uniform practice regarding occupational deferments for registrants who have been accepted by the Peace Corps. Petitioner presents no less authority than a letter from the Selective Service liaison officer of the Peace Corps that some boards grant, and others deny, occupational deferments to registrants accepted by, although not yet actually serving in, the Peace Corps. Respondents submit no contradictory facts.

This divergence in practice regarding the guidelines for occupational deferments with respect to the Peace Corps is unconscionable. Two registrants with equal claims for deferment will be treated differently simply because they are registered with different boards. Manifestly, such a fortuitous circumstance is not a rational basis for classifying which young men will be drafted and which deferred.

All inequalities in the application of the law run against the grain. But varying criteria for occupational deferments in time of war are particularly galling. Nevertheless, different standards may be justified on the basis of local necessity borne of shortages in certain critical occupations, but here the occupation serves not local but national interests, and surely its worth, or lack of it, to the nation does not turn on the location of a registrant's draft board.[11] Unequal treatment of two individuals respecting occupational deferments for service in the Peace Corps solely because they are registered with different draft boards, thus, verges on a denial of due process.[12]

We do not, however, decide that question. We hold only that the board violated petitioner's right to due process by failing to consider facts presented in support of his claim for a reopening and reclassification.

■ Respondents argue, however, that the board did consider, and eventually did deny, petitioner's request for a reopening and reclassification. They

9. United States v. Walsh, *supra*.

10. 32 C.F.R. § 1622.2.

11. See Changes in the Draft: The Military Selective Service Act of 1967, 4 Colum.J. of Law & Social Problems 120, 148–149 (1968).

12. *Cf.* Gruenwald v. Gardner, 390 F.2d 591 (2d Cir.), cert. denied, Gruenwald v. Cohen, 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968).

claim that the board members considered petitioner's request by telephone consultations on November 21 and 22, 1968 and, on the latter date, denied petitioner's request for a special meeting to determine his right to an occupational deferment. Respondents, in effect, claim that belated consideration of petitioner's request for a reopening after issuance of the induction order did not prejudice petitioner. The fact, however, is that it did.

Prior to issuance of the induction order, petitioner could have obtained a reopening if he had presented facts which, if true, would entitle him to a requested deferment. After issuance of the induction order, however, petitioner's burden is heavier, for in addition to the foregoing, he must also convince the board that subsequent to issuance of the induction order there has been a change in his status resulting from circumstances over which he had no control.[13] The board's failure to consider petitioner's request for a reopening until after issuance of the induction order, thus, did prejudice petitioner by imposing a heavier burden on him. The board's irregular and tardy procedure, therefore, cannot substitute for the board's failure to consider petitioner's request prior to issuance of the induction order. That failure denied petitioner procedural due process, and his induction into, and present detention in, the United States Army are, therefore, illegal.

In view of the foregoing, it is unnecessary to decide whether petitioner presented facts which required the board not only to consider, but also to reopen petitioner's classification and to reclassify him II-A. We, therefore, do not reach those questions.

Accordingly, Stephen W. Helden is ordered released forthwith from the armed forces and from the custody of respondent, Commanding Officer, Armed Forces Examining and Entrance Station, 39 Whitehall Street, New York, New York.

So ordered.