UNITED STATES of America

v.

Jack Sheldon GOODFELLOW, Defendant.

No. 68 Cr. 674.

United States District Court,
S. D. New York.

Dec. 28, 1970.

Whitney North Seymour, Jr., U. S. Atty. for the Southern District of New York, New York City, for the United States; Peter L. Truebner, Asst. U. S. Atty., of counsel.

David N. Ellenhorn, New York City, for defendant; Kronish, Lieb, Shainswit, Weiner & Hellman, New York City, Leon B. Polsky, Chester L. Mirsky, New York Civil Liberties Union, New York City, of counsel.

## OPINION

McLEAN, District Judge.

This defendant was tried before me, without a jury, on December 9, 1970, on an indictment filed in July 1968 charging him with failing to submit to induction into the Armed Forces of the United States, in violation of 50 App. U.S.C. § 462(a).

██ Shortly before the trial, defendant moved, pursuant to Rule 48(b), to dismiss the indictment because of the delay in prosecution. I denied the motion with leave to renew it at the close of the trial when I would be in a better position to determine whether defendant had been prejudiced by the delay. Defendant renewed his motion at that time. The facts, which are essentially undisputed, were fully explored at the trial. It is clear that defendant has not been prejudiced by the regrettable delay. That motion is therefore denied.

I turn now to the merits. It is undisputed that on December 2, 1966, defendant did in fact refuse to submit to induction. The issue is whether he should have been required to submit. This depends upon whether the induction notice sent to him by his draft board was valid.

The history of this defendant's efforts to avoid military service is long and somewhat complicated. It is unnecessary to recount it all. The essential facts are as follows.

After an unsuccessful attempt in early 1966 to persuade his draft board, Local Board No. 55 of Endicott, New York, to change his classification from I-A to II-A on grounds not material here, defendant applied to the board in August 1966 for deferment on the ground that he had been selected to enter training in the Peace Corps for a program in Ghana, and that his training would begin on October 1, 1966. On August 22, 1966, the clerk of the board acknowledged receipt of this application and advised defendant that it would be submitted to the board in the middle of September. It was not submitted to the board.

On October 2, 1966 defendant wrote to the clerk of the board stating that there would be a delay in his entry into the Peace Corps because of the fact that he had married a foreign national. The letter stated:

"You will therefore, I believe, receive notification from the Peace Corps that I am withdrawn from my present assignment and will be reassigned to a slightly later program."

On October 5, 1966, the clerk sent to defendant a notice ordering him to report for induction on October 25, 1966. The clerk did this without consulting the board.

On October 7, 1966, the Peace Corps wrote to the board stating that defendant had been accepted by the Peace Corps for the Ghana program and that his training would begin on October 10, 1966. It is obvious that this letter was out of date before it was written and that its author was unaware of the fact that defendant had been "withdrawn from my present assignment," as he had stated in his letter of October 2. The clerk of the board took it at face value, however, and on October 13, 1966, wrote to the Peace Corps stating that defendant's file would be presented to the board at its November meeting. On October 14, the clerk wrote to defendant cancelling the induction notice previously sent to him which had ordered him to report on October 25. The clerk did not consult the board about either of these letters. Defendant's file was not presented to the board at its November meeting.

On October 13 the Peace Corps finally drew abreast of the situation and wrote to the board the letter which defendant had predicted on October 2 that it would write. This letter, which was not received at the board office until October 18, stated that prior to defendant's marriage he had been accepted for the Peace Corps program in Malawi [not Ghana], but because of his marriage, "it was

necessary to temporarily withdraw his invitation." The letter went on to say:

"Pending the status of Mrs. Goodfellow's application for U.S. citizenship, and his military status we will be considering them for upcoming programs if they are available. At this point we are prepared to issue them invitations to train for service in Guatemala."

After receiving this letter, the clerk of the board on October 21 sent defendant a new induction notice ordering him to report for induction on November 15, 1966. She did this without consulting the board. She did, however, consult an "auditor" from the State Selective Service Board who was in the local board office at the time. He advised her to send the notice.

On November 1, 1966, there was received by the office of the board a communication from the Peace Corps dated August 31, 1966 advising that defendant had been selected for training for the program in Ghana. This information by this time was hopelessly out of date. There was typed at the bottom of this document, however, under the printed legend "Other," the following statement dated October 29, 1966:

"As explained more fully in letter from Claude Franklin of 10/13/66, Mr. Goodfellow did not enter training for Malawi program and his current Peace Corps status is pending the outcome of his wife's application for U.S. citizenship. We will notify you of any further developments."

The clerk did not submit this letter to the board. Instead, she telephoned the office of the State board and talked with someone there who advised her that the induction notice for November 15, 1966 should be allowed to stand. Accordingly, on November 8 the clerk wrote to defendant advising him that his induction notice was still in effect, inasmuch as he was not actually in service in the Peace Corps.

On the same day, November 8, that this letter was written by the clerk, still another communication from defendant was received by the clerk. It stated that the Peace Corps had accepted him for training in Puerto Rico, apparently this time for a program in Colombia, and that training would begin on March 13, 1967. On November 15, 1966, the Peace Corps wrote to the board confirming that defendant had been selected for training in Puerto Rico to begin on March 13, 1967. The clerk did not submit these communications to the board. The induction notice remained outstanding.

In the meantime, defendant had been "transferred," merely for induction purposes, to a New York board, which, on November 18, 1966, informed defendant, in effect, that the induction order issued by the Endicott board returnable on November 15, 1966 was extended to December 2, 1966. Defendant was directed to report on that day.

On November 29, 1966, three days before he was to be inducted, defendant wrote to Local Board No. 55 in Endicott stating that he was a conscientious objector. He requested a personal appearance before the board to explain his beliefs. Defendant flew from New York to Endicott on December 1. The board convened a special meeting, heard defendant's application for reclassification as a conscientious objector, and rejected it.[1] On the following day defendant appeared at the induction center in New York and refused to submit to induction.

The clerk of Local Board 55 testified that some years before 1966 the board adopted a resolution authorizing her to send induction notices to qualified registrants in the order of their respective ages. The resolution has not been preserved, hence we have no way of know-

---

1. Some months later, in response to a request from the United States Attorney for written findings of fact, the board unan-imously found that defendant was not sincere in his conscientious objector claim.

ing exactly what it provided. She also testified that she had standing instructions from the board to consult state board headquarters "in difficult cases." After seeing the clerk testify, I am satisfied that she acted in good faith and that she felt that she was following these instructions in acting upon the advice of the state auditor and of some unidentified person in state board headquarters. The question remains, however, whether the way in which the clerk handled this situation was proper under the circumstances.

■ In the first place, if the general instructions to which the clerk testified can be construed in some way to mean that the board authorized the clerk, in consultation with state headquarters, to pass on applications for deferment involving the Peace Corps, it seems plain that under the regulations, the board had no power thus to delegate its authority. The regulations clearly place that responsibility on the shoulders of the board. 32 C.F.R. § 1622.1(c) provides that:

"It is the local board's responsibility to decide, subject to appeal, the class in which each registrant shall be placed. Each registrant will be considered as available for military service until his eligibility for deferment or exemption from military service is clearly established to the satisfaction of the local board. The local board will receive and consider all information, pertinent to the classification of a registrant, presented to it."

Furthermore, Section 1622.20(a) provides:

"On the local board is placed the responsibility, under applicable rules and regulations, of deciding which men should be deferred because of their civilian activities."

■ In the second place, I do not believe that these general instructions can fairly be construed to mean that the board attempted to place all responsibility in the hands of the clerk, nor do I believe that the clerk intended the court to infer that she so understood them. On two different occasions the clerk informed either the defendant or the Peace Corps that defendant's application for deferment would be submitted to the board. The clerk must have realized that board approval was necessary. There is no adequate explanation, however, of the clerk's failure to submit the applications to the board.

■ The government emphasizes the fact that at the time the induction notices were sent to defendant by the clerk, defendant was not actually in the Peace Corps. The government argues that therefore it is immaterial whether the board considered the applications or not, for under the regulations it was not required to grant deferment to a registrant who was not actually engaged in the activity on the strength of which he sought deferment. The government points to 32 C.F.R. § 1622.20(b) which provides that:

"No deferment from training and service shall be made in the case of any individual except upon the basis of the status of such individual."

And to Section 1622.23(a) which provides:

" * * * a registrant's employment in industry or other occupation * * shall be considered to be necessary to the maintenance of the national health, safety, or interest only when all of the following conditions exist:

(1) The registrant is, or but for a seasonal or temporary interruption would be, engaged in such activity."

In this connection the clerk testified that it was the policy of the board not to consider applications for a II–A classification until the applicant was engaged in the occupation in question. She also testified, however, in substance, that as far as the Peace Corps was concerned, it was the board's policy to postpone sending an induction notice to an applicant who had sought deferment on the basis of his forthcoming membership in the Peace Corps, even though he was not actually in the Peace Corps at the time,

provided that he was expected to join the Corps in the immediate future. Presumably, it was because of this latter policy that the clerk advised defendant on August 22, 1966 that she would submit his application to the board in mid-September even though defendant's application stated that his training would begin thereafter, i. e., on October 1.

It is thus apparent that there was no hard and fast rule that to be entitled to a Peace Corps deferment, a registrant must be in the service of the Peace Corps at the moment. The board's policy seems to have been more flexible. It became a question of judgment in each case as to how imminent the registrant's Peace Corps service was. Moreover, under Section 1622.23(a), it was also a question of judgment in this particular case as to whether defendant could be said to be engaged in Peace Corps activity but for "a temporary interruption."

The exercise of this judgment was the province and duty of the board. It could not be exercised by the clerk, with or without the advice of employees of the state board. Defendant was entitled to a decision from the board itself. One may speculate, as perhaps the clerk did, that the board, if it had been asked, would have denied defendant's October and November applications.[2] But speculation on the part of the clerk or of the court is not an adequate substitute for board action.

In a very similar case, Helden v. Laird, 306 F.Supp. 1351 (S.D.N.Y.1969), Judge MacMahon held that because of the failure of a Selective Service Board to pass upon a registrant's application for deferment on the ground of his prospective membership in the Peace Corps, the registrant's right to procedural due process had been violated, the induction notice was invalid, and consequently the registrant, who had submitted to induction, was entitled to a discharge from the Armed Forces. Although the circumstances in that case were somewhat different from this one, on principle it is indistinguishable. In my opinion the decision is correct and should be followed here. I feel compelled to hold, therefore, that the induction notice in the present case was invalid because the board never acted upon defendant's applications for a Peace Corps deferment. No valid induction notice could be sent until after the board had discharged its duty of considering defendant's applications. The fact that the board never even knew of the applications, since the clerk did not inform it, is immaterial.

This is not to suggest that an unscrupulous registrant can stall off his induction indefinitely by bombarding a board with repeated frivolous applications for deferment. My holding is limited to the facts of this case. The applications here were not frivolous.

In view of this conclusion, it is unnecessary to deal with defendant's other contentions with respect to his last minute claim for reclassification as a conscientious objector.

This opinion constitutes the court's findings of fact and conclusions of law.

I find defendant not guilty. Defendant's motion for a judgment of acquittal is granted.

So ordered.

---

2. The clerk's failure to submit defendant's August application to the board in September 1966 would appear to have been harmless, since the clerk on her own initiative cancelled the first induction notice in October.