**UNITED STATES ex rel. Gerald E. SIGNORELLI**

v.

**Lt. Commander Andrew T. MALLECK.**

**Civ. No. 13383.**

United States District Court,
D. Connecticut.

Oct. 16, 1969.

Zbigniew S. Rozbicki, Torrington, Conn., for plaintiff.

J. Daniel Sagarin, Asst. U. S. Atty., New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION ON PETITION FOR A WRIT OF HABEAS CORPUS

BLUMENFELD, District Judge.

■ By this petition for a writ of habeas corpus, Gerald E. Signorelli, a

Selective Service registrant, challenges the legality of his induction into the United States Army. Having submitted to induction, a writ of habeas corpus is appropriate for this purpose. Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968); Powers v. Powers, 400 F.2d 438 (5th Cir. 1968); Laino v. Secretary of Defense, 292 F.Supp. 252 (D.S.C.1968).

Petitioner claims that his induction was unauthorized because he is afflicted with severe hay fever, a condition which, under the Selective Service's own medical fitness standards, disqualifies him for service in the armed forces. Furthermore, he contends that he was improperly denied a medical interview to establish the presence of his hay fever condition.

### The Facts

Petitioner's Selective Service file reveals that from November 19, 1964, until March 21, 1968, he was classified II–S as a full-time college student.

On March 20, 1968, he was ordered to report for a preinduction physical examination and on the following day he was classified I–A. His physical examination was scheduled for April 10, 1968. Prior to that date, he delivered two letters to the local board. One disclosed the results of a refraction examination by an optometrist. The other, from Dr. Sidney W. Jennes, read as follows:

"To whom so ever this may concern:

"Gerald Signorelli of Torrington, Connecticut has been under my care since April 1964 for treatment of Hay Fever. He is receiving injections every two weeks as prophylactic therapy.

Sincerely,
Sidney W. Jennes, M.D."

These written statements from Dr. Jennes and the optometrist served to amplify his medical history and were reviewed and considered in connection with his preinduction physical examination.[1] AR 601–270, CH. 3, § III, ¶ 68h(6) at 3–21, SSLR 2260.

The petitioner was found fully acceptable for induction into the armed forces and on April 15, 1968, the local board was so informed by the Armed Forces Examination and Entrance Station (AFEES) in New Haven. The board in turn notified petitioner. Based on this finding of acceptability, a new I–A draft card was sent to the petitioner on April 22, 1968.[2] He requested a personal appearance before his local board,[3] which was scheduled for July 1, 1968. At that hearing, and upon the appeal to the State Appeal Board from the board's action in having again classified him I–A, his sole claim was that the board should not have deprived him of his II–S status. During the time it took to process his appeal, he continued his studies. His appeal was rejected on November 6, 1968. On November 18, 1968, he was again classified I–A. On December 20, 1968, he was ordered to report for induction on January 14, 1969. This precipitated a second round of draft board proceedings. On December 27, 1968, he requested a I–S (C) (a temporary deferment for college students to allow them to finish the academic year, or until they leave school, whichever comes sooner). On January 13, 1969, the local board postponed his induction until January 27, 1969, and on January 23, reclassified him as I–S(C). Then on February 6, 1969, after the end of the semester in which he had completed the courses which qualified him for graduation, he was reclassified I–A. The petitioner again appealed, seeking a I–S

---

1. Both letters are stamped on the back: "Reviewed and considered in examinee's physical profile AFEES, NEW HAVEN, CONN.," dated 4/10/68 and signed by Alexander Pinkes, a contract physician. This was pursuant to AR 601–270, CH. 3, § III, ¶ 70d at 3–24, SSLR 2261.

2. 32 C.F.R. § 1623.4(a) (1969): "As soon as practicable after the local board has classified or reclassified a registrant * * * it shall mail a notice thereof on a Notice of Classification * * * to the registrant."

3. 32 C.F.R. § 1624.1 (1969).

(C) until September of 1969. This was rejected, and on June 13, 1969, he was again mailed a I–A draft card. On June 18, 1969, he was ordered to report on July 3, 1969, for another armed forces physical examination, and on July 14, 1969, he was ordered to report for induction on August 6, 1969. On August 5, petitioner was notified that his induction, scheduled for August 6, had been postponed "to permit a review of his medical acceptability." Not until August 21, 1969, was he again ordered to report for induction.

### The Request for a Medical Review

 Finally, on August 23, 1969, after the third order to report for induction, the petitioner, through his attorney, requested the local board for a medical interview [4] "to determine the propriety of his recent acceptability notification." On August 25, other letters were sent to the State Director and the Surgeon General requesting a stay of induction pending the medical interview.

It seems paradoxical that a request for a stay of induction pending a medical interview should be made at this point, since a medical interview had been held earlier, although not initiated at the local board level. On July 14, 1969, the date petitioner was notified of his induction scheduled for August 6, petitioner's father wrote to Senator Abraham Ribicoff complaining of his son's treatment by the Selective Service System. The father wrote another letter of the same tenor to the Senator on July 22. Senator Ribicoff apparently instituted inquiries at the National Headquarters of the Selective Service System which led to a request on July 29, 1969, from AFEES, New Haven, to the local board and the State Director to return the petitioner to New Haven for a medical consultation [5] on August 1, 1969. In response to a telephoned notice from the local board on July 31, 1969, he went the next day to see Dr. William W. Esdaile, a civilian doctor under contract with AFEES to perform medical examinations.[6]

### The Merits

 Petitioner claimed that he suffered from a disqualifying medical condition specified in the regulation.[7] Dr. Esdaile was fully qualified to determine whether he did. His examination of the petitioner was in full compliance with the regulations. 32 C.F.R. § 1628.3 (1969).[8] There was no relaxation of the

---

4. The 1968 letters from petitioner's optometrist and allergist, see page 154, *supra*, did not constitute a claim for a medical interview under § 1628.2(b). Section 1628.1 provides that the Surgeon General of the Army shall prescribe a list of medical conditions or physical defects that disqualify registrants for service in the armed forces. The purpose of a medical interview is to screen and disqualify at the local board level those registrants who have conditions enumerated in the list. Apart from the fact that the letters were not in affidavit form, 32 C.F.R. § 1628.3(b)(2) (1969), and the registrant had known about these aspects of his physical condition since 1964 and had never before brought them to the attention of the board, 32 C.F.R. § 1625.1(b) (1969), they failed to describe such a disqualifying defect. Hay fever disqualifies only "if severe; or if not controllable by antihistamines or by desensitization, or both." AR 40–501, CH. 2, § XIV, ¶ 2–28 at 2–14, SSLR 2210. Had the letters described such a defect, the board might have been required to act on its own volition. 32 C.F.R. § 1628.2(a) (1969). The presumption is that the local board processed him in accordance with the applicable statutes and regulations. Oestereich v. Selective Service System Local Board No. 11, *supra*, 393 U.S. at 241, 89 S.Ct. 414 (Harlan, J., concurring).

5. AR 601–270, CH. 3, § III, ¶ 65h(4) at 3–21, SSLR 2260.

6. AR 601–270, CH. 3, § III, ¶ 65b(4) at 3–15, SSLR 2257.

7. Page 154 and note 3, *supra*.

8. If there was any deviation from the regulations because Dr. Esdaile was a contract physician, paid for his services, rather than a volunteer appointed by the President, 32 C.F.R. § 1604.61 (1969), this did not cause any substantial prejudice to the petitioner. Olguin v. United States, 392 F.2d 329, 330 (10th Cir.

standards for determining whether there was a cause for his rejection. After examining the petitioner and his full medical record, including letters from his own doctors,[9] he concluded that the petitioner had: "Mild to Moderate Hay Fever. This man could probably do just as well with anti histamines. Fit for military Service." (Government's Exhibit A).

Indeed, the evidence shows that complete medical records, including Dr. Esdaile's report, were reviewed by Col. George W. Sgalitzer, Surgeon General, United States Army Recruiting Command, and by Col. Ralph R. Chapman, Chief, Physical Standards Division, Department of the Army, both of whom also found the petitioner medically qualified under current medical fitness standards.

█ The fact that the impetus for the interview was initiated from the level of National Headquarters did not deprive petitioner of any right, nor cause him any substantial prejudice.[10] The petitioner suggests that Operations Bulletin No. 327[11] is an unwarranted short cut of the regulations. That Bulletin provides that when a late claim of a disqualifying medical condition ("one that has not been previously presented and evaluated by the Local Board Medical Advisor or the Armed Forces Examining and Entrance Station") is presented after "the registrant has already had his physical examination" and an induction order has already been issued,[12] the evidence should be presented to the examining physician at the time of induction. But this is a red herring. Although the claim in this case was made by the petitioner after he had been both properly "screened"[13] and examined, it is not necessary to determine whether the Operations Bulletin constitutes a binding interpretation of 32 C.F.R. § 1628.2(b). Cf. United States ex rel. Lawrence v. Commanding Officer, 58 F.Supp. 933 (D.Neb.1945); Ex parte Stewart, 47 F.Supp. 415 (S.D.Cal. 1942). In this case, the basis for evaluation of the .petitioner's claim was not limited to the evidence he would have presented at. the examining station, as prescribed by the Bulletin. His late claim was given all the consideration it would have received if timely presented. He was given a full examination by a qualified physician to determine whether he suffered from the claimed disqualifying medical condition.

At the hearing in this court, the petitioner also argued that his examination by Dr. Esdaile was inadequate for lack of scratch tests or patch tests. His own

---

1968); Laino v. Secretary of Defense, 292 F.Supp. 252, 255 (D.S.Car.1968). Cf. Smith v. Resor, 406 F.2d 141, 146 (2d Cir. 1969).

9. On July 25, 1969, petitioner submitted a letter from his allergist, Dr. Jennes:
 "To whom this may concern:
 "Gerald Signorelli has been under my care since 1964 for treatment of Hay Fever. He has had severe episodes in the past, sometimes requiring cortisone to control his trouble. He must receive injections of an extract of the pollen every two weeks to control the Hay Fever and prevent Asthma.
 Sincerely yours,
 Sidney W. Jennes, M.D."
 On July 31, 1969, he submitted a letter from Dr. Vanoni, his family doctor, saying:
 "To Whom It May Concern:

 "Re: Gerald Signorelli
 "Gerald Signorelli has been referred to an allergist and is now being seen regularly every three months. He must also carry medication with him at all times.
 "Gerald is still under treatment for this condition.
 Sincerely yours,
 Frank R. Vanoni, M.D."

10. See note 8, supra, and cases cited therein.

11. SSLR 2200:60–61.

12. On July 14, petitioner was ordered to report for induction on August 6, 1969.

13. See note 4, supra.

experts testified that these were significant only for determining to what substances he was sensitive, not the degree of severity of his allergy. Furthermore, his own allergist, Dr. Jennes, testified that his hay fever is not now severe and that the injections he has been receiving have controlled it. His estimate was that the petitioner's hay fever is moderate, as distinguished among the degrees —mild, moderate and severe.

■■ The burden is on the petitioner to show that his local board had "no basis in fact" for classifying him at I–A and ordering him to report for induction. Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567 (1946);[14] 50 U.S.C. App. § 460(b) (3) (Supp. IV, 1969).[15] There was ample basis in fact for the determination that his hay fever was not sufficiently severe to qualify as a cause for rejection. Consequently, he was properly classified I–A.

On the basis of the foregoing findings and conclusions, the petition is dismissed.

So ordered.

The temporary restraining order heretofore issued pending the court's decision in this case is continued in effect until October 22, 1969, in order to permit an application to the Court of Appeals for a further stay if deemed advisable.

---

14. See cases cited note 8, *supra*.

15. 50 U.S.C.App. § 460(b) (3) provides in part:
"* * * No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title [section 462 of this Appendix], after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review

shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant. * * * "
By this proviso, Congress has codified the existing case law, *e. g.,* Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); United States v. Jakobson, 325 F.2d 409 (2d Cir. 1963), aff'd sub nom. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); Benzian v. Godwin, 168 F. 2d 952 (2d Cir.), cert. denied, 335 U.S. 886, 69 S.Ct. 235, 93 L.Ed. 425 (1948).