UNITED STATES of America ex rel. Warren Lee TAYLOR, Petitioner,

v.

Major Edward W. FRITZ, Commanding Officer of the Fort Des Moines Examining and Entrance Station, Respondent.

Civ. No. 10-172-C-1.

United States District Court, S. D. Iowa, Central Division.

Feb. 2, 1971.

10. *Cf. Lynn v. City of Longview*, 15 Wash.2d 528, 131 P.2d 164 (1942); *Steiner v. Hawaiian Trust Co., supra* n. 8.

Robert C. Oberbillig, Des Moines, Iowa, for petitioner.

Allen L. Donielson, U. S. Atty., and Richard J. Barry, Asst. U. S. Atty., for respondent.

## MEMORANDUM AND ORDER

STEPHENSON, Chief Judge.

By this action Warren Lee Taylor, a December 14, 1970 inductee into the Armed Forces of the United States, seeks his release from the custody of Major Edward W. Fritz, Commanding Officer of the Fort Des Moines Examining and Entrance Station. He bases his claim on 28 U.S.C. § 2241 et seq. The case was tried to the Court on January 6 and 7, 1971.

Taylor's basic position is that his induction was unlawful because he suffers from a disqualifying medical condition specified in the regulations promulgated under the Military Selective Service Act of 1967. In his brief Taylor specifically contends that his induction was unlawful because he is afflicted with a hearing loss of thirty decibels in both ears, a condition which, under the Selective Service's own medical fitness standards, disqualifies him for service in the Armed Forces.

Taylor's selective service file discloses the following chronological factual summary:

1. March 12, 1965 until June 1967. Taylor was classified II–S as a full-time college student. Parenthetically, the Court notes that Taylor received his first student deferment on January 24, 1964.

2. December 21, 1967. Taylor's Local Board classified him I–A on the basis of its belief that he was not then enrolled in school. No appeal was taken.

3. February 15, 1968. Taylor was ordered to report for induction March 25, 1968.

4. March 19, 1968. Taylor was classified I–S(C) as a student deferred by statute until the end of his academic

year. The order to report for induction was cancelled.

5. June 4, 1968. Taylor applied for voluntary induction into the Armed Forces of the United States.

6. June 17, 1968. Taylor's Local Board ordered him to report for induction July 23, 1968.

7. July 24, 1968. Taylor submitted to a physical examination at the Armed Forces Examining and Entrance Station, Des Moines, Iowa. He was found not acceptable for induction due to defective hearing. Taylor's Local Board was advised that he was medically disqualified but that a reevaluation was believed justified after the lapse of six months.

8. August 8, 1968. Taylor's Local Board classified him I–Y as a registrant who is not eligible for a lower class, and would be classified in Class I–A, Class I–A–O, or Class I–O but for the fact that he is found under applicable physical, mental, and moral standards to be not currently qualified for service in the Armed Forces and who would be qualified for such service in time of war or national emergency declared by the Congress.

9. March 24, 1970. Taylor was ordered to report for a preinduction physical examination April 13, 1970, the purpose of which was to determine whether he was then qualified for military service under current standards. The date of the examination was subsequently changed to May 18, 1970 at Taylor's request.

10. May 18, 1970. Taylor was found fully acceptable for induction into the Armed Forces and the Local Board was so informed by the Armed Forces Examination and Entrance Station in Des Moines.

11. June 5, 1970. Taylor sent a copy of the following letter, written on the letterhead of the Des Moines Register and Tribune, to his Local Board:

"The Hon. Senator Harold E. Hughes
1327 New Senate Office Building
Washington, D. C. 20510

"Re: Unfair practices at the Fort Des Moines Examining and Induction Center.

(some background: I am Warren Taylor. I am 25, married (no children yet), and a senior in journalism at Drake University, due to graduate late this summer. I am also a full-time staff photographer with the Des Moines Register. I am not looking for a way out of the draft, merely some equitable treatment.)

On Monday, May 18, 1970, I reported, as ordered, for my preinduction physical examination at the Fort Des Moines Examining and Induction Center. It was my third appearance there: My first I took involuntarily in 1964 (and passed with the notation of a hearing deficiency), the second was an induction physical in the summer of 1968 (in which I failed the hearing examination).

During last month's examination I also did poorly on the hearing test. According to Captain Sweeney (presumably chief medical officer at Fort Des Moines), I did too poorly because my patterns didn't match." I was forced take [sic] three more hearing tests under the threat of being retained for three days (I should note here that this was during the final week of classes at Drake university where I am a full-time student and I had term papers due and was facing final exams the following week—that is, I had no time to spare.).

I failed the second set of tests also. My examiner was most irate, calling my audiograms "bullshit," and he reported to Captain Sweeney. I was then informed that I would remain for as long as it took for me to pass the test (the exact quote from one of Capt. Sweeney's assistants was: "We'll keep you here until you pass."). By this time I was of course under severe emotional strain, what with being harassed, accused of dishonesty, and degraded (I allow very few people to call me a s.o.b.), not to mention the pressure of the final two weeks of school.

Nevertheless, I asked to take the test again. I wanted desperately to pass it by this time.

I found out it was easy to pass it. By holding down the button an extra length of time, I was able to score very well. I cheated to pass the test, because at that time, all I wanted was out. The examiner was instantly satisfied with the results, even though the pattern seemed erratic-looking to me.

So I was released. I had been forced to do something dishonest just to get out of the building. I had brought evidence of my hearing deficiency from an independent source, the Des Moines Hearing and Speech Center (on 6th Avenue in the Hawley Building). But this evidence was disregarded by the staff at Fort Des Moines. One of the civilian doctors at the induction station commented, "I could go any where in Des Moines and flunk any hearing test in town!" That is probably true. But it is also true that *I* could *pass* any hearing test in town. (I might add that the Hearing and Speech Center's test is more than twice as long and much more thorough.)

Considering all of the above, I (1.) believe that I was treated unfairly, (2.) believe that the Fort Des Moines Examining and Induction cannot issue to me an equitable examination of my hearing capacity, and (3.) I cannot accept as valid the results (be they failing or passing) of any hearing examination given to me by the above station.

It is for these reasons and all of the above listed considerations that I will appeal a ruling which classifies me as physically acceptable for induction into the armed services. I will, however, accept any ruling by any *impartial* source on my hearing ability.

Senator Hughes, I hope I have made my case clear. I am writing to you now because the final two weeks of school left me no time to write sooner. I realize the importance of the statements I've made and remain solely responsible for them. I felt my case needed to be aired to Someone, and you, in my opinion are it.

> Peace in our time,
> Warren Taylor"

12. June 18, 1970. The following letter was sent to Senator Hughes by Glenn R. Bowles, State Director, Iowa State Headquarters, Selective Service System:

"Dear Senator Hughes:

The registrant's letter to you, along with his Selective Service file, was referred to Doctor Sweeney, Medical Officer, Des Moines Armed Forces Examining and Entrance Station, for his comments, and he is of the opinion that the registrant's effort to correctly record his hearing capabilities was less than cooperative.

When he 'cheated' to pass the test the results were nearly identical to a hearing test he had taken earlier. On suspicion of cheating on an earlier test, the registrant was advised that he would be held over for three days, for re-testing if he wouldn't cooperate. This is not unusual if a comprehensive testing is required to check for cheating.

The registrant should be advised that when he reports for induction he will be extended another test, and it will be a fair test, and he should grant the examiner the opportunity to correctly record his hearing abilities.

> Sincerely,
> GLENN R. BOWLES"

13. June 22, 1970. Taylor was classified I–A by the Local Board.

14. June 24, 1970. Taylor was advised of his right to a personal appearance before his Local Board and of his right to appeal the I–A classification under 32 C.F.R. § 1624.1(a). No personal appearance was timely requested; no request for an appeal to the State Appeal Board was timely made.

15. August 20, 1970. Taylor caused to be submitted on his behalf a report

from the Des Moines Hearing and Speech Center. The Local Board filed this report in Taylor's official file. The thrust of the report served to amplify Taylor's medical history and it was subsequently reviewed and considered in connection with his medical fitness.

16. August 31, 1970. Taylor was ordered to report for induction September 22, 1970.

17. August 31, 1970. Taylor's Local Board forwarded his file to State Headquarters and requested that it review all medical information received since Taylor was examined May 18, 1970.

18. September 9, 1970. State Headquarters advised the Local Board that Taylor remained qualified for military service.

19. September 10, 1970. State Headquarters requested the Local Board to again forward Taylor's selective service file for review. This was done September 11, 1970.

20. September 16, 1970. Major G. W. Newstrom of State Headquarters advised the Local Board that he personally requested the Armed Forces Examination and Entrance Station (AFEES) to reevaluate and re-test Taylor's hearing. Major Newstrom stated that AFEES personnel informed him that no further testing was warranted. Major Newstrom then advised Taylor by telephone that he should report for induction as previously ordered.

21. September 18, 1970. The Local Board received a copy of a letter written by Taylor to the Surgeon General requesting that he be medically disqualified or reexamined. The letter recites that Taylor's hearing had been tested "several times since last May, * * *, which all reveal that my hearing is below the standards for acceptance in the Armed Forces." Taylor enclosed a report from Doctor Robert R. Updegraff, M.D. Doctor Updegraff stated, inter alia, that Taylor should "avoid undue exposure to undue loud noises as much as practical."

22. September 21, 1970. Taylor requested a transfer for induction. The request was promptly approved.

23. September 24, 1970. State Headquarters requested the Local Board to forward Taylor's file for review on Congressional Inquiry.

24. October 2, 1970. State Headquarters requested the Local Board to postpone the date of Taylor's induction pending a determination of his acceptability.

25. October 6, 1970. Taylor's Local Board postponed his induction.

26. October 20, 1970. State Headquarters advised the Local Board that the Surgeon General found Taylor acceptable for induction.

27. Taylor was advised that he should report for induction November 18, 1970.

28. November 9, 1970. Taylor obtained a postponement of his induction, again by requesting a transfer for induction.

29. November 17, 1970. Taylor requested further reevaluation from the Surgeon General. The request was granted. Evidence received at the January 6–7 hearing reveals that the Surgeon General directed that Taylor be examined by Doctor Harold McCoy, a physician in Des Moines, Iowa. Doctor McCoy examined Taylor on November 17, 1970, and found him medically qualified for induction.

30. November 23, 1970. The Surgeon General determined that Taylor was fully acceptable for induction.

Taylor expectedly presents to this Court the same arguments which were unavailing in his efforts to elude induction. Most of his concern rests in his feeling that the quality and quantum of medical evidence is insufficient to justify a I–A classification. He places primary reliance on the plausible testimony of Doctor Updegraff that his hearing is below the medical fitness standards

specified by the Surgeon General of the Department of the Army. He argues that the fact he passed the May 18, 1970 physical examination was not of his volition; that he was "forced" to cheat during this examination because "all I wanted was out." Despite these arguments the Court fails to see how it can act favorably on Taylor's petition. On analysis, the Court must reject all of Taylor's contentions for the following reasons:

■ 1. 50 App. U.S.C. § 460(b) (3) makes decisions of Selective Service Boards with respect to classification "final." This being so, the Court must start with the principle long established that its scope of review is a narrow one. It is permitted to overturn the classification only if it has no basis-in-fact, or if it finds that the Local Board's action had the effect of denying Taylor basic procedural fairness. Vaughn v. United States, 404 F.2d 586, 589–590 (8th Cir. 1968), vacated on other grounds, Morico v. United States, 399 U.S. 526, 90 S.Ct. 2230, 26 L.Ed.2d 776 (1970); Morgan v. Underwood, 406 F.2d 1253, 1254–1255 (5th Cir. 1969), cert. denied, 396 U.S. 944, 90 S.Ct. 380, 24 L.Ed.2d 245 (1969); United States ex rel. Signorelli v. Malleck, 314 F.Supp. 153, 157 (D.Conn. 1969); Brede v. Allen, 311 F.Supp. 599, 602 (N.D.Ohio 1969).

■ 2. In determining whether the Local Board had a basis-in-fact for the June 22, 1970 I–A classification, the Court must, of course, look to the facts and circumstances extant at that time. The selective service file reveals that AFEES personnel, as well as the Local Board, both were aware of Taylor's hearing problems at the time of the May 18, 1970 physical examination. Indeed, these problems had served as the basis for Taylor's August 8, 1968 I–Y classification. However, the file reveals that the May 18 physical resulted in a finding of medical fitness. And, the Local Board had before it Taylor's letter to Senator Hughes and Director Bowles'

response thereto at the time of its June 22, 1970 meeting. Nevertheless, with all of this information before it, the Local Board unanimously voted a I–A classification. There was therefore a basis-in-fact for the classification. See Byrne v. Resor, 412 F.2d 774, 775 (3d Cir. 1969); United States ex rel. Johnson v. McBee, 311 F.Supp. 531, 534 (N.D.Ill.1970). But see United States v. Haifley, 432 F. 2d 1064, 1066 (10th Cir. 1970). And, of course, this Court cannot now re-weigh the evidence then before the Local Board to determine whether the I–A classification was justified.

■ 3. One might, of course, at this point inquire why Taylor failed to appeal his I–A classification within thirty days when notified of such right on June 24, 1970. His failure to do so is tantamount to a failure to exhaust administrative remedies, and sufficient to preclude the collateral review which he is now receiving.

■ 4. Taylor's legal situation is no better on the procedural due process issue. In fact, the favorable treatment he did receive, was, in large measure unwarranted. Taylor's methods in putting his claims before the Selective Service authorities amount to a deliberate bypassing of the orderly procedures available at the local board level. Taylor did not request a personal appearance before the Local Board; he did not appeal the I–A classification; he did not request a medical interview; in short, Taylor's posturing did nothing to clearly put his position before the Local Board whose action he is now attacking.

5. The Court is fully satisfied that there is no denial of basic procedural fairness in this case. Taylor was given every conceivable opportunity to present his claims before the appropriate Selective Service authorities. The medical evidence which he presented in connection with his claims was considered and reviewed by the Local Board, by AFEES personnel and by the Surgeon General.

6. The Court finds nothing in the testimony of Doctor McCoy which contraindicates procedural due process. Taylor contends that Doctor McCoy failed to properly test his hearing. The evidence at the January 6–7 hearing shows that the Surgeon General directed that Taylor be examined by Doctor McCoy, a civilian doctor under contract with AFEES to perform medical examinations. Doctor McCoy was fully qualified to determine whether Taylor's hearing met Selective Service standards. Taylor argues that because Doctor McCoy used tuning forks rather than audiometric equipment he could not thereby accurately measure hearing loss. This is a good argument, but at this stage of the case it is not persuasive. It is clear from Doctor McCoy's testimony that his examination of November 17, 1970 was in full compliance with the controlling regulation, 32 C.F.R. § 1628.-3. United States ex rel. Signorelli, 314 F.Supp. at 155, *supra*. That section provides in pertinent part that Doctor McCoy was required to give such examination as he deemed necessary. It was obviously Doctor McCoy's view that a test by means of tuning forks was appropriate; he conducted such a test and concluded that Taylor did not suffer from a disqualifying defect. The Surgeon General again reviewed all of the medical evidence, including the report of Doctor McCoy, and again found Taylor medically acceptable under current medical fitness standards.

The Court is satisfied that all of the foregoing adequately supports the Local Board's classification of June 22, 1970, and that it demonstrates that Taylor suffered no denial of procedural due process. Accordingly, it must deny Taylor's petition for a writ of habeas corpus.

It is ordered that the petition of Warren Lee Taylor for a writ of habeas corpus be and is hereby denied.