**Michael Kettel HAGGERTY, Plaintiff,**

v.

**SELECTIVE SERVICE SYSTEM, LOCAL BOARD NO. 15, PITTSBURGH, PENNSYLVANIA, Defendant.**

Civ. A. No. 70–1085.

United States District Court,
W. D. Pennsylvania.

March 17, 1971.

Supplemental Opinion March 24, 1971.

------

George E. Schumacher, Schumacher & White, Pittsburgh, Pa., for plaintiff.

Richard L. Thornburgh, U. S. Atty., Henry G. Barr, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

GOURLEY, District Judge:

Plaintiff, a Selective Service registrant, seeks an injunction restraining the defendant from enforcing its Order of September 8, 1970, directing plaintiff to report for induction. The defendant moved to dismiss the Complaint on the ground, inter alia, that pre-induction judicial review was precluded by Section 10(b) (3) of the Military Selective Service Act of 1967, 50 U.S.C. App. § 460(b) (3). Finding that the Complaint alleged procedures of the Board and the Secretary of the Army unauthorized by statute and violative of the Constitution, the Court concluded in its Opinion of October 6, 1970 that the claim fell within the exception to Section 10(b) (3) recognized in the case of Oestereich v. Selective Service Board, 393 U.S. 233, 89 S. Ct. 414, 21 L.Ed.2d 402 (1968).

The matter presently before the Court is plaintiff's request for a preliminary injunction. A hearing was conducted upon plaintiff's request on October 15, 1970, and a Temporary Restraining Order originally entered on September 11, 1970 was extended pending adjudication of the matter. Counsel for the respective parties were directed to file briefs and proposed findings of fact and conclusions of law upon the filing of a transcript of the record of the hearing. Unfortunately, the adjudication of this matter has been long delayed for the reason that compelling priorities precluded the Court Reporter from filing the transcript until January 18, 1971. This is particularly regretted in the light of the fact that, upon a review of the pleadings, briefs, record and law applicable herein, I am of the opinion that injunctive relief should be denied.

Plaintiff is a registrant of Michigan Local Board No. 323, located in Royal Oak, Michigan (hereinafter "the Michigan Board"). His Selective Service file is substantial, and it is necessary to recount only what is material to the issues presented here.

Plaintiff was a student at the University of Miami, Coral Gables, Florida, from 1963 through January of 1969 and received successive student deferments during that time. In response to a Classification Questionnaire, SSS Form 100, plaintiff advised the Michigan Board on June 9, 1965 that he then knew of no physical or mental condition which, in his opinion, would disqualify him from service in the Armed Forces. By Order of the Michigan Board dated June 19, 1967, plaintiff was directed to report for a pre-induction physical examination on July 5, 1967. Plaintiff was examined on the scheduled date, and, based upon the examination, the Armed Forces Entrance and Examining Station (AFEE Station) in Detroit, Michigan, returned to the Michigan Board a Statement of Acceptability, DD Form 62.

The Michigan Board reclassified plaintiff as I–A on March 13, 1969. After his reclassification but before receiving notice of the same, plaintiff, on March 19, 1969, wrote a letter to the Michigan Board enclosing therewith a letter of Dr. John M. Best indicating that an examination of the plaintiff in February of the same year revealed the existence of a condition known as first degree spondylolisthesis of the fifth lumbar vertebra, which rendered plaintiff "more liable to injury of his lower back." The condition appears to have first become manifest to plaintiff subsequent to an automobile accident occurring in January of 1969.

On March 31, 1969, the Michigan Board mailed plaintiff a Notice of Classification and SSS Form 217 advising him of his right to a personal appearance or appeal within thirty days. Plaintiff neither requested a personal appearance nor appealed within the prescribed time. The Selective Service file indicates that plaintiff did make a visit to the Michigan Board on May 19, 1969, and requested that "all medical papers be sent down to fort (sic) Wayne for review."

Although the correspondence in the file contains some ambiguity, it appears that the letter from Dr. Best and other medical papers were forwarded to the AFEE Station in Detroit, Michigan, which had previously examined plaintiff. Upon receipt of the records, Captain Chandler, Assistant Processing Officer of the AFEE Station, sent a memorandum to Michigan State Headquarters, Selective Service System, wherein he advised that the evidence furnished was not sufficient to warrant a change in the registrant's acceptability and suggested that the plaintiff be returned to the AFEE Station for re-examination. It was suggested further that the plaintiff submit a letter from his physician at that time. State Headquarters communicated this information to the Michigan Board, requesting at the same time that plaintiff be ordered to report for another pre-induction physical examination.

Plaintiff was ordered to report for the additional pre-induction physical examination on August 18, 1969. On the appointed day, plaintiff provided to the Detroit AFEE Station a medical history of his back trouble and the names of physicians Dr. Walter Willoughby and Dr. John Best. Noted on the medical history was "malformed spine" and spondylolisthesis. However, on the basis of the history and examination, the Detroit AFEE Station returned to the Michigan Board a Statement of Acceptability, DD Form 62, on the day of the examination.

The Michigan Board issued an Order on September 22, 1969, directing plaintiff to report for induction on October 16, 1969. Plaintiff thereafter requested both a transfer of induction to the area of Pittsburgh, Pennsylvania, and a postponement of induction due to personal hardship, since his father was undergoing surgery at that time. Both requests were granted. Plaintiff's induction was transferred to Local Board No. 15, Pittsburgh, Pennsylvania, the defendant in this action (hereinafter, the "Transfer Board"). The Transfer Board issued an Order on December 2, 1969, directing plaintiff to report for induction on December 9, 1969.

Upon reporting for induction, plaintiff received the standard physical examination which precedes induction. The examining physician had before him plaintiff's medical records including the X-ray report of Dr. Joseph Mazzei, dated February 8, 1969, indicating a finding of "spondylolysis of L-5 with first degree spondylolisthesis of L-5 and S-1." Based upon the medical records and his examination of plaintiff, the examining physician stated in his report "disqualifying defects or communicable diseases were noted this date."

The Commanding Officer of the Pittsburgh AFEE Station then made the further determination that plaintiff was a "registrant of national prominence" within the meaning of a directive of the Secretary of the Army dated April 28, 1966 and, in accordance with the procedures established by that directive, plaintiff's medical records were forwarded to the Chief of Personnel Operations of the Department of the Army along with a memorandum noting "Mr. Haggerty is currently playing professional football with the Pittsburgh Steelers." In turn, the Chief of Personnel Operations submitted the medical records and attached memorandum to the Office of the Surgeon General for review.

Plaintiff's medical records and the memorandum were considered by Lt. Col. William Peard, a specialist in mili-

tary medicine, and Lt. Col. Richard Torp, an orthopedic consultant, both of whom concluded that plaintiff was qualified for military service under Part 2–43 of Army Regulation 40–501, designated the Vocational Waivers provision. This determination became the decision of the Secretary of the Army and was communicated to the Commanding Officer of the Pittsburgh AFEE Station, who thereafter forwarded to the Transfer Board appropriate documents indicating that plaintiff had been found qualified for military service. Acting upon this information, the Transfer Board issued several subsequent orders for plaintiff to report for induction, the latest of which was issued on September 8, 1970 and which plaintiff now seeks to enjoin here.

Plaintiff makes an all encompassing attack upon the procedures whereby he was found medically acceptable for service in the Armed Forces. He contends:

1. That the medical reports which plaintiff furnished to the Board and the finding of the medical examiner at the Pittsburgh AFEE Station, although presenting facts allegedly warranting a reopening of plaintiff's classification, were never considered by the Michigan or Transfer Board, resulting in a deprivation of plaintiff's right to procedural due process of law.

2. That the military directive whereby the medical records of persons of national prominence found to have disqualifying defects are forwarded to Army Headquarters for further medical review is standardless and deprived the plaintiff of due process of law.

3. That Subpart 2–43 of Army Regulation 40–501, providing for Vocational Waivers, is vague and standardless, unauthorized by statute and violative of due process of law.

■ Plaintiff's first contention, that the Board failed to give requisite consideration to his back condition, newly discovered in January of 1969, is without merit. Plaintiff first advised the Michigan Board of his back condition by his letter of March 19, 1969 and enclosed report of Dr. John M. Best. Plaintiff already had been examined and found medically acceptable for military service before this date. The Michigan Board, in fact, did consider the medical report of Dr. Best and, in ordering plaintiff to report for another physical examination, acted in accordance with the applicable regulation, 32 CFR § 1628.4(e). Section 1628.4(e) provides:

"(e) If the local board determines that the registrant does not have a disqualifying medical condition or physical defect which appears in the list described in § 1628.1, or if the local board has any doubt concerning the existence of any such condition or defect, the local board shall order the registrant to report for armed forces physical examination as provided in section 1628.11."

The action of the Michigan Board in ordering another physical examination was indistinguishable from the course taken by the registrant's Local Board in United States v. Smith, 423 F.2d 559 (9th Cir. 1970). The Court stated in the *Smith* case, at p. 562:

"* * * Here, Smith brought the matter to the Board's attention only after he had been examined and found acceptable. The local board did act on it; it ordered him to report for a second physical examination, a procedure that was in substantial conformity with 32 C.F.R. § 1628.4(e). In the absence of contrary evidence, we assume that the determination referred to in that subsection was made, i. e., that the board had a doubt as to the existence of the claimed disqualification. That determination is supported by ample basis in fact in the record."

Similarly, I am here convinced that the Michigan Board did consider the new evidence submitted to it on March 19, 1969, and, finding itself in doubt as to whether it indicated a medical condition warranting reclassification, properly di-

rected the plaintiff to submit for another physical examination.

The case of United States v. Ford, 431 F.2d 1310 (1st Cir. 1970), cited by plaintiff, is different in material respects. There the registrant's physician and a psychiatrist sent letters to his local board advising that the registrant had a substantial psychiatric problem. A clerk at the Board, without referring the matter to the members of the Board for consideration, simply mailed the letters to an AFEE Station, where the registrant was found acceptable for military service. In the case at bar, unlike the *Ford* case, *supra,* the Board evaluated the medical evidence submitted, was in doubt as to whether it warranted a reclassification and, based upon this determination, ordered a second physical examination.

Plaintiff contends that the Michigan Board was bound to re-open plaintiff's classification upon receipt of the letter from Dr. Best. However, plaintiff was not mailed a notice of I–A classification until a week or more after the Michigan Board received the letter from Dr. Best. Plaintiff was advised at that time of his right to a personal appearance or appeal. Nevertheless, knowing of his back condition, he requested neither.

■ It is argued that, under Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), the Michigan Board was beholden to reopen plaintiff's classification under 32 C.F.R. § 1625.1 on the basis of the evidence submitted, even though no specific request for reopening was made. See also United States v. Ford, *supra.* I disagree. Mulloy requires that a local board must reopen if there are submitted to the board new facts or allegations which, if true, would warrant granting the requested reclassification. Dr. Best's letter of March 3, 1969, which plaintiff submitted to the Board, is as follows:

"To Whom It May Concern:

Mike Haggerty of 30539 Hickory Lane, Franklin, Michigan, was examined on February 13, 1969, at which time he was found to have a first degree spondylolisthesis of the fifth lumbar vertebra. This condition of his spine makes him more liable to injury of his lower back.

Sincerely yours,
/s/ John M. Best
John M. Best, M.D."

This letter, accepted as true, did not set forth sufficient facts to warrant reclassification and the Michigan Board therefore acted quite properly in directing further medical examination.

Section 1628.1 of 32 C.F.R. confers authority upon the Surgeon General to "prescribe or approve a list enumerating various medical conditions or physical defects that disqualify registrants for service in the Armed Forces." Pursuant thereto, the Surgeon General has promulgated Army Regulation 40–501, Subpart 2–36 of which provides with respect to the condition here in question:

"2–36 Spine and Sacroiliac Joints

The causes for rejection for appointment, enlistment, and induction are—

\* \* \* \* \* \*

h. *Spondylolysis or spondylolisthesis* that is symptomatic or is likely to interfere with performance of duty or is likely to require assignment limitations."

The letter from Dr. Best dated March 3, 1969 provided no indication whatsoever as to whether plaintiff's back condition is symptomatic or likely to interfere with performance of duty or is likely to require assignment limitations. A reopening of plaintiff's classification therefore was not warranted on the basis of this information. Nor was a reopening warranted after plaintiff's later physical examination at the Detroit AFEE Station. The Detroit AFEE Station returned a Statement of Acceptability, DD Form 62, which provided no basis for the Michigan Board's reopening at that time.

■ Plaintiff also contends that the Michigan Board or Transfer Board had a duty to reopen plaintiff's classification

after learning that the examining medical officer at the Pittsburgh AFEE Station had entered on plaintiff's records the statement "disqualifying defects or communicable diseases noted this date." This contention is without merit. The applicable regulation is 32 C.F.R. § 1632.30, which provides:

"Upon receiving notice from the induction station that a selected man who has been forwarded for induction has been inducted or finally found not qualified for service in the Armed Forces, the local board shall reopen his classification and classify him anew."

Neither the Michigan Board nor the Transfer Board ever received a notice that plaintiff, upon being forwarded for induction, was "finally found not qualified" on the basis of the medical examiner's notation. Plaintiff was placed on holdover status at the AFEE Station pending further review of his medical records. No papers were returned to the Transfer Board by the Commanding Officer pursuant to 32 C.F.R. § 1632.20 until a final medical determination was made. Upon such final determination, the Transfer Board was furnished with a report of medical acceptability for service and appropriate documents.

■ Once the Transfer Board received the report of plaintiff's medical acceptability from the Commanding Officer of the AFEE Station, it was bound to abide by that determination. This, I believe, is implicit in 32 C.F.R. § 1623.-30. Section 1632.30 does not contemplate a review by a local board of the factual basis upon which military authorities determine at the time of a registrant's induction that said registrant is medically qualified for military service. Nor do I find that the concept of procedural due process, applied in an administrative context, requires otherwise.

Plaintiff next directs a multitude of constitutional challenges to the action of the Commanding Officer in forwarding his medical records for further review to Headquarters of the United States Army, the action of the Secretary of the Army in determining his acceptability for military service, and the regulations pursuant to which these actions were taken. Plaintiff asserts that, if the aforementioned procedures were constitutionally infirm, the orders to report for induction issued by the Transfer Board thereafter were invalid and their enforcement should be enjoined.

■ It is questionable whether there was any necessity for the Transfer Board to issue additional orders to report for induction subsequent to the Order of December 2, 1969. Upon reporting for induction on December 9, 1969, plaintiff was placed upon holdover status by the Armed Services pending review of his medical records. There is nothing in the Selective Service regulations which would suggest that such action terminated plaintiff's continuing duty to report for induction under the Order of December 9, 1969 or that a successive order would have to issue upon it being determined by the Armed Services that plaintiff was medically fit for induction. It would appear that the Transfer Board performed the last duty with which it was charged by delivering plaintiff to the Pittsburgh AFEE Station on the appointed day. Since the actions taken subsequent thereto were those of the Armed Services, it would appear that injunctive relief premised upon the impropriety of those actions necessarily would have to be directed against proper military officials. None has been named a party defendant to the suit, and it is questionable whether any injunctive relief granted here would be binding upon such persons under Rule 65 of the Federal Rules of Civil Procedure.

However, even if it were assumed that plaintiff's present duty to report for induction springs from an order of the Transfer Board issued after the determination by the Surgeon General and that said order would be invalidated by constitutional infirmities in the procedures followed by the Armed Forces

here, I find that no such infirmities are to be found.

Challenged first is the procedure whereby the Commanding Officer of the Pittsburgh AFEE Station made the determination that plaintiff was a person of national prominence and, based on that determination, forwarded his medical records for further medical review pursuant to an Order of the Secretary of the Army embodied in a letter dated April 28, 1966. That Order provides in pertinent part:

"1. The following procedures apply to the preinduction processing of registrants of national prominence who are disqualified medically and/or mentally for military service. Registrants concerned are defined as: Registrants achieving national prominence by virtue of their personal ability in athletics, entertainment, business, government, other professions or activities, or who are members of families that are nationally prominent in these areas. Determination of cases to be forwarded to Headquarters, Department of the Army, in accordance with instructions in this letter will be made by the Commanding Officer, Armed Forces Examining and Entrance Station. The Commanding Officer will carefully screen all cases forwarded to Department of the Army to assure that the individual is actually of national prominence.

2. These registrants will be completely processed in the normally prescribed manner except that, prior to dispatch to Selective Service local boards, their records will be forwarded from the continental United States Armed Forces Examining and Entrance Stations through Headquarters, United States Continental Army Command, ATTN: DCSPER–PD, Fort Monroe, Virginia, 23351, to the Chief of Personnel Operations, ATTN: EPPAW, Department of the Army, Washington, D. C., 20310, for review and final determination of medical and/or mental acceptability. Oversea commands will forward records direct to the Chief of Personnel Operations. Records will be returned by Department of the Army through command channels to the originating Armed Forces Examining and Entrance Station, with appropriate instructions, for return to Selective Service local boards."

The authority to establish the foregoing procedure may be found in the general powers conferred upon the Secretary of the Army in 10 U.S.C. § 3012. See also 50 U.S.C. App. § 454(a) and 32 C.F.R. § 1628.1.

██ Plaintiff asserts that the definition of persons of national prominence contained in paragraph one of the Order is so vague and standardless as to deprive plaintiff of "life, liberty or property, without due process of law" in violation of the Fifth Amendment to the Constitution. However, the Fifth Amendment protects substantial rights; it does not guarantee a particular form of procedure. Public Service Corp. v. Securities and Exchange Commission, 129 F.2d 899 (3d Cir. 1942). Under the terms of the aforementioned Order, the determination that a registrant is or is not a person of national prominence neither governs nor constitutes a factor in the decision as to whether the registrant is acceptable for military service. The determination of national prominence has procedural consequences only, rendering the registrant's medical records subject to higher review. The medical acceptability of the registrant, whether nationally prominent or not, is determined solely on the basis of the medical criteria set forth in Army Regulation 40–501. Thus, no substantial right of the plaintiff, protected by the Fifth Amendment, was affected by the determination of his national prominence. In any event, for the purpose of determining merely whether the registrant's records are to be subjected to further review, the criteria established cannot be regarded as vague or standardless.

██ It is contended that plaintiff was denied due process of law in that

he was not afforded an ample opportunity to present evidence as to whether he was a person of national prominence or not. In response to this contention, it is necessary only to reiterate what has been said before, that no substantial right afforded plaintiff by the Fifth Amendment was affected by the determination that he was a person of national prominence. Also there is no indication that plaintiff did not have the opportunity to present information relevant to this matter at the Pittsburgh AFEE Station. No more was required. Cf. Rase v. United States, 129 F.2d 204 (6th Cir. 1942).

■ Similarly the contention that the determination of plaintiff's national prominence was without any basis in fact and, for that reason, a deprivation of Fifth Amendment rights, also is rejected upon the principles previously stated. Moreover, the fact that plaintiff was playing tackle on the first offensive team of the Pittsburgh Steelers provided a sufficient factual basis for this determination.

Next challenged is the procedure whereby it was determined that, despite his back condition, plaintiff was acceptable for military service. Section 454(a) of Title 50 U.S.C. App. provides in pertinent part:

"No person shall be inducted into the Armed Forces for training and service * * * until his acceptability in all respects, including his physical and mental fitness, has been satisfactorily determined under standards prescribed by the Secretary of Defense * * *"

Implementing this provision is Executive Order 11098, 32 C.F.R. § 1628.1, which provides in relevant part that the Surgeon General of the Department of the Army "shall, from time to time, prescribe or approve a list enumerating various medical conditions or physical defects that disqualify registrants for service in the Armed Forces."

Consistent with the directive in 32 C.F.R. § 1628.1, there has been promulgated Army Regulation 40–501, the pertinent subparts of which are as follows:

"2–36. Spine and Sacroiliac Joints

The causes for rejection for appointment, enlistment, and induction are—

* * * * * *

h. *Spondylolysis or spondylolisthesis* that is symptomatic or is likely to interfere with performance of duty or is likely to require assignment limitations."

"2–43. Vocational Waivers

When an individual who fails to meet the medical standards listed in this chapter has demonstrated in the pursuit of his civilian occupation, profession, or avocation that he is likely to be able satisfactorily to perform the duties of a member of the Armed Forces, the medical examiner may recommend to the Surgeon General of the appropriate service that such an individual be accepted on waivers of medical fitness standards. Such cases shall be considered by the Surgeon General before a final decision is made."

Upon review of plaintiff's medical records and the attached notation to the effect that plaintiff "is currently playing professional football," the Office of the Surgeon General entered on plaintiff's records the notation "medically qualified" and cited as a basis for the conclusion Subpart 2–43, quoted above.

■ Plaintiff contends that the promulgation of Subpart 2–43, the Vocational Waivers provision, is unauthorized by either 50 U.S.C. § 454(a) or Executive Order 11098 since neither the Statute nor the Executive Order vest the Surgeon General with authority to waive a disqualifying physical defect. However, neither the Statute nor the Executive Order prescribe what physical defects are to be regarded as disqualifying. This duty clearly was delegated to the Surgeon General, and it was well within his discretion to determine not only what physical defects are to be regarded

as disqualifying, but also in what circumstances.

▮ The Vocational Waivers provision merely gives recognition to the principle that a registrant may be found medically fit for military service even though he has an enumerated physical defect where his previous occupation or avocation evidences to a medical examiner that the defect has not been of such a disabling nature as to indicate an unlikelihood that the registrant could perform satisfactorily, in a medical sense, in the Armed Forces. The promulgation of the regulation was a valid exercise of delegated authority.

▮ It is contended that the Vocational Waivers provision unreasonably discriminates between professional athletes and other individuals, in violation of the Due Process Clause of the Fifth Amendment. The Vocational Waivers provision does not create a distinction between registrants who are professional athletes and those who are not. Rather, it distinguishes between those registrants whose prior occupations or avocations demonstrate their physical fitness despite their having enumerated physical defects and those registrants whose prior occupations or avocations do not demonstrate the same.

▮ Although the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is "so unjustifiable as to be violative of due process." Shapiro v. Thompson, 394 U. S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968). The Vocational Waivers provision cannot be so regarded. A registrant's physical or mental performance in his prior occupation or avocation is a reasonable criterion of his physical or mental fitness for military service. Therefore, such distinctions between registrants as may be drawn under the Vocational Waivers provision are justifiable as reasonably related to the statutory purpose expressed in 50 U.S.C.A. App. § 454(a).

▮ Plaintiff asserts that the determination under the Vocational Waivers provision was procedurally infirm because he had no opportunity to explain the nature of his employment and its bearing upon his physical condition. However, both at his pre-induction physical examinations and at his examination on the day scheduled for induction, plaintiff had the opportunity to present a medical history, the reports of physicians, and any other information relevant to his physical condition, including the extent to which his physical condition may have limited him in the performance of his occupation. I perceive no deprivation of the right to procedural due process here.

▮ Plaintiff also contends there was no factual support for the finding that his prior occupation evidenced his fitness for military service despite the existence of his back condition. The Court is here limited to a consideration of whether there was a basis in fact for such a finding. United States ex rel. Signorelli v. Malleck, 314 F.Supp. 153 (D.Conn.1969) aff'd. 428 F.2d 823 (2nd Cir. 1969); Laino v. Secretary of Defense, 292 F.Supp. 252 (D.S.C.1968). It has been observed that the basis in fact test is "one of the narrowest known to the law." Bohnert v. Faulkner, et al., 438 F.2d 747 (6th Cir. 1971), No. 20773, decided February 16, 1971 but not yet officially reported. With this in mind, I consider the fact that plaintiff was currently playing professional football for the Pittsburgh Steelers at the time of his examination an ample factual basis for the finding made. Plaintiff's argument that he could have been simply "warming the bench" is somewhat specious. If his play were so limited, I have no doubt that he would have informed the examining physician at the Pittsburgh AFEE Station of this fact. While the mere designation of the title of a registrant's occupation might in given instances provide insufficient facts upon which to render an intelligent judgment as to whether that occupation evidenced a physical or mental fitness for military service, such is not the circumstance here.

██ Even if there were a constitutional infirmity in the Vocational Waivers provision or in the manner by which the Surgeon General rendered a determination pursuant thereto, which I do not find to be the case, the finding of the Surgeon General that plaintiff is medically acceptable for military service is sustainable on the alternative basis of Subpart 2–36 of Army Regulation 40–501, independent of any question of vocational waivers. Lt. Col. Richard Torp and Lt. Col. William Peard, the specialists charged with the responsibility of reviewing plaintiff's medical records and determining on behalf of the Surgeon General plaintiff's fitness for military service, both testified in this Court that plaintiff was qualified under Subpart 2–36. Implicit in this conclusion is the finding that plaintiff's back condition is not "symptomatic or likely to interfere with performance of duty or is likely to require assignment limitations." The medical records offered in evidence in this proceeding indicate that there is a basis in fact for such a finding.

It is the conclusion of the Court that the forwarding of plaintiff's medical records by the Pittsburgh AFEE Station to Headquarters of the Department of the Army and the subsequent determination by the Office of the Surgeon General that plaintiff is medically fit for military service comported with applicable regulations, were authorized in law, and were not violative of the right of plaintiff to due process of law.

An appropriate order is entered.

### ORDER

Now, this 17 day of March 1971, it is ordered that plaintiff's Motion for Preliminary Injunction be and the same is hereby denied. It is further ordered that the Order of the defendant dated September 8, 1970, directing plaintiff to report for induction, shall be stayed until 2 P.M. on March 31st, 1971, so as to afford plaintiff the opportunity to seek a further stay from the Court of Appeals pending appeal. A general stay of defendant's Order pending appeal is denied.

### SUPPLEMENTAL OPINION

Now, this 24 day of March 1971, the Court hereby amends its Opinion dated March 17, 1971 by adding to the conclusion thereof the following paragraph:

The foregoing shall constitute this Court's Findings of Fact and Conclusions of Law consistent with the provisions of Rule 52 of the Federal Rules of Civil Procedure.