**UNITED STATES of America,**
**Plaintiff,**

v.

**Gregory Crawford LAVIN, Defendant.**

**No. 71 CR 860.**

United States District Court,
S. D. New York.

June 9, 1972.

M. James Spitzer, Jr., New York City, New York Civil Liberties Union, for defendant.

Whitney North Seymour, Jr., U. S. Atty., for the Southern District of New York, by George E. Wilson, Asst. U. S. Atty., for plaintiff.

## OPINION

POLLACK, District Judge.

On August 13, 1971, Gregory Crawford Lavin was indicted for violating the Military Selective Service Act of 1967 by refusing to submit to induction on December 28, 1970, as ordered by his local board on December 14, 1970. The case was tried to the Court on May 17 and 18, 1972, defendant having waived his right to a jury by written stipulation reaffirmed by him in open court before trial commenced. The government's case consisted of items in defendant's selective service file and the testimony of several witnesses including a medical expert. Defendant adduced no evidence. He has moved for acquittal on several grounds, and both sides have submitted post-trial briefs on the points of law involved pursuant to leave granted by the Court.

On February 26, 1970, defendant reported to the Armed Forces Examining and Entrance Station (AFEES) pursuant to an order issued by Local Board No. 12, Peekskill, New York, and there began to undergo a pre-induction physical examination. At this time defendant was a student at Colgate University located at Hamilton, New York and was classified 2–S (full-time undergraduate college student); he expected to graduate on May 31, 1970.

At the request of AFEES authorities, defendant's local board ordered defendant to return to the examination station for cardiology consultation on April 17, 1970. Defendant, however, obtained a transfer of the examination to the area in which he was attending college, and the consultation date and place were changed to June 1 at Norwich, New York. The pre-induction physical was completed on that date and defendant was found fully acceptable.

Meanwhile, during March and April, defendant interposed a claim for conscientious objector classification. His local board concluded thereon that defendant opposed only the war in Vietnam, and accordingly denied his claim on August 20, 1970, reclassifying him from 2–S to 1–A (available for military service). After receiving notification and pursuing an unsuccessful appeal, defendant was ordered on December 14, 1970 to report for induction on December 28, 1970.

On the latter date, defendant appeared at the induction center, received another physical examination and was again found fully acceptable. However, according to the testimony of the processing officer present at the station on that date and the documentary evidence in defendant's file, defendant refused to take the symbolic step forward, i. e., to submit to induction.

Reports from two medical doctors which appear in defendant's file are in contention. They relate to the condition of defendant's eyes. The first, dated February 19, 1970, is addressed to the local board by Philip Knapp, M.D. of New York City, and is date-stamped by the local board at February 20, 1970. Another stamp on this letter indicates that it was "reviewed and considered in examinee's [defendant's] profile" on June 1, 1970. The second letter, dated February 24, 1970, is addressed simply "To whom it may concern" by Maurice Tannenbaum, M.D. of Peekskill, New York. It contains the same notation of having been reviewed and considered in examinee's profile on June 1, 1970.

The Knapp report states in pertinent part that in 1966 defendant showed "an esotropia of 25 for distance and 30 for near with a double hypertopia". The other report recites that it was "Copied [by Tannenbaum] from the records of S. Karash, M.D. [deceased]" without mention of any date of those records, reading: "Alternating Esotropia since birth. Last vision Nov. 1964 20/20 OD 20/20 OS No fusion present."

*The Medical Interview Claim*

■  Defendant claims that the Knapp report evidences a "potentially disqualifying defect" which required the local board to order an interview with the

board's medical advisor pursuant to 32 C.F.R. § 1628.2(b). (This section was revoked August 27, 1970).[1]

Section 1628.2(b) of 32 C.F.R. at the time defendant was being processed required such an interview only when the registrant claimed one or more of the disqualifying medical conditions or physical defects which appeared in a Surgeon General's list. See 32 C.F.R. § 1628.1. According to Local Board Memorandum No. 78 (May 29, 1963, unamended), this list is set forth in Chapter 2 of Army Regulations (AR) No. 40–501 entitled "Medical Fitness Standards for Appointment, Enlistment, and Induction".

Paragraph 2–12(h) of AR 40–501 sets out two disqualifying defects which, according to defendant, were "potentially indicated" by the Knapp report. These defects are Strabismus of 40 prism diopters or more, uncorrectable by lenses to less than 40 diopters (subparagraph [4]) and Strabismus of any degree accompanied by documented diplopia (subparagraph [5]).

■  Neither of the reports, however, indicates the presence of either of the disqualifying defects, potentially or otherwise, assuming their submission constitutes a "claim" and that they were made in proper form (*But see* 32 C.F.R. § 1628.3(b) (2) requiring or at least suggesting medical affidavits). *Cf.* United States ex rel. Signorelli v. Malleck, 314 F.Supp. 153 (D.Conn.1969), aff'd, 428 F. 2d 823 (2d Cir. 1969), cert. denied, 397 U.S. 1008, 90 S.Ct. 1236, 25 L.Ed.2d 421 (1970). Alternating Esotropia *per se,* the type of strabismus mentioned in the Tannenbaum report, has no effect on sight whatsoever according to the government's medical expert. Neither of the reports indicate that defendant's

---

1. 32 C.F.R. § 1628.2(b) (1970) provided: "Whenever a registrant . . . claims that he has one or more of the disqualifying physical defects which appear in the list described in section 1628.1 [*i. e.,* that list prescribed or approved by the Surgeon General], the local board shall order him to present himself for interview with the medical advisor . . . ."

This subsection has since been revoked. Exec. Order 11553, 35 Fed.Reg. 13719 (1970). The present version of the regulation only provides for "medical interviews" when the local board, in its discretion, orders one. Martire v. Local Board, 442 F.2d 895, 896, n. 1 (2d Cir. 1971).

form of strabismus was accompanied by diplopia, which the evidence describes as an extremely rare occurrence. Accordingly, the submission of these reports did not require a medical interview.*

■ Defendant further contends that the local board order of March 25, 1970, requiring defendant to report to AFEES for cardiology consultation, constituted a "reevaluation" order requiring an interview by the board's medical advisor before defendant's cardiological examination. This claim is made under LBM No. 78 (May 29, 1963, as am. 8/30/63) which provided at paragraph 2:

> Whenever the armed forces examining and induction station suggests that a registrant be returned for reevaluation after a specified time, the registrant should be interviewed by the medical advisor to the local board before he is returned to the station, to determine whether it would be appropriate to forward the registrant for reevaluation.

Defendant's contention labelling the order as a "Reevaluation", is without merit. Defendant's *initial* evaluation had not been completed when AFEES requested that defendant submit to a cardiological consultation. "Reevaluation" refers to reexamination of a registrant discharged because of failure to meet entrance medical fitness standards. This is not the case here. State Director Advice No. 769 (April 9, 1969), 2 S.S. L.R. 22; *see also* United States v. Baray, 445 F.2d 949 (9th Cir. 1971), United States v. Smith, 1 SSLR 3370 (D.Ore. February 6, 1969), aff'd, 423 F.2d 559 (9th Cir. 1970); *cf.* Naskiewicz v. Lawver, 456 F.2d 1166 (2d Cir. 1972).

*Consideration by the Board of the reports*

Defendant also contends that the Knapp and Tannenbaum reports were not considered by the local board when his classification was reclassified on August 20, 1970. This, according to defendant, violated section 1622.1(c)[2]. That regulation is made applicable to reclassification by 32 C.F.R. § 1625.11.[3]

■ There is no specific evidence on the subject whether the local board did or did not consider the reports in deciding defendant's classification on August 20, 1970. In the absence of proof to the contrary, the Court is entitled to presume that the board acted in compliance with the regulations and considered all the material in the file including all of defendant's medical papers when the board met and reclassified defendant from 2–S to 1–A. *See* United States v. Harris, 436 F.2d 775 (9th Cir. 1970), cert. denied, 402 U.S. 981, 91 S.Ct. 1645, 29 L.Ed.2d 147 (1971), United States ex rel. Signorelli v. Malleck, 314 F.Supp. 153 (D.Conn.1969), aff'd, 428 F.2d 823 (2d Cir. 1969), cert. denied, 397 U.S. 1008, 90 S.Ct. 1236, 25 L.Ed.2d 421 (1970); *cf.* United States v. Sandbank, 403 F.2d 38, 40 (2d Cir. 1968), cert. denied, 394 U.S. 961, 89 S.Ct. 1301, 22 L.Ed.2d 562 (1969).

■ It has been held in other circuits that failure of a local board to consider separately *new* medical evidence of a *disqualifying* defect submitted *after* a preinduction physical, renders an induction order based on AFEES findings alone invalid. United States v. Miller, 455 F.2d 358 (9th Cir. 1972); United States v. Jackson, 454 F.2d 821 (5th Cir. 1972); United States v. Ford, 431 F.2d 1310

---

* *But cf.* United States ex rel. Kempf v. Commanding Officer, 339 F.Supp. 320 (S.D.Iowa 1972).

2. 32 C.F.R. § 1622.1(c) (1970) provides in part:
"It is the local board's responsibility to decide, subject to appeal, the class in which each registrant shall be placed. . . . The local board will receive and consider all information, pertinent to the classification of a registrant, presented to it. . . .

3. 32 C.F.R. § 1625.11 (1970) provides in part:
"When the local board reopens the registrant's classification, it shall consider the new information which it has received and shall again classify the registrant in the same manner as if he had never before been classified. . . . "

(1st Cir. 1970). But even if the Court assumes that the local board did not consider the reports separately, prejudice to the registrant must be established before the induction order may be voided. Briggs v. United States, 397 F.2d 370 (9th Cir. 1968); United States v. Mangone, 333 F.Supp. 932, 940 (S.D.N.Y. 1971); cf. Grosso v. Resor, 322 F.Supp. 670 (E.D.N.Y.1971), aff'd 439 F.2d 233 (2d Cir. 1971).

Where the medical evidence in question clearly contains nothing that is inconsistent with the findings of the AFEES examiners, no prejudice has been shown. See United States v. Kirkpatrick, 446 F.2d 1371 (10th Cir. 1971). The medical evidence in question in the *Miller, Jackson* and *Ford* cases contradicted the AFEES findings there. Here, however, the Knapp and Tannenbaum reports do not describe a disqualifying defect.

Moreover, no Court in this Circuit has required a local board to consider medical claims apart from AFEES findings. The question of the medical interview aside, it suggests an absurdity to have lay members of a local board pass on whether a form of strabismus is a disqualifying defect.

### The Execution of the Medical Examination Report

■ Defendant points to a failure to mark answers in boxes on the Medical Examination Report form and contends that this omission is fatal to the government's case. Defendant relies on cases holding that the failure to conduct a "physical inspection" at the time of induction, pursuant to AR 601–270, ch. 4, § II at 4–21 (1969), invalidates the induction process.[4] However, paragraph 5–36 of AR 601–270, applies to the Medical Examination Report form. That paragraph requires entries only when disqualifying defects are found. The absence of marks thus means that no such defects were found. The lack of an entry does not imply that the test was not given or that the results were disqualifying.

It is apparent from the examination of the documents in defendant's file that the matter of defendant's eye condition was referred to consultation. The Consultation Report (St.F. 513) indicates that the esotropia condition given by defendant as the reason for his request for a consultation was considered and reported on, the finding being of a "15% Alternating esotropia. No other path[ology]". These findings were entered on the Medical Examination Report in question. Defendant submitted no proof at the trial in respect to these findings and they stand uncontradicted as non-disqualifying defects. See United States v. Hedges, 297 F.Supp. 946 (S.D.Iowa 1969), aff'd, 441 F.2d 726 (8th Cir. 1971).

### The Prior Military Rejection Claim

Defendant contends that once he had notified the local board that he had been examined at West Point Hospital in October, 1966 and that his application to the United States Military Academy was rejected on account of eye condition findings there, the local board had a duty to secure these findings in determining his classification. Apparently, defendant contends that the Board's failure to take such action, or at least to require defendant to secure the documentation himself, prejudiced his medical deferment claim, for he alleges that such evidence would have supported that claim.

■ There is no need here to consider the duty, if any, of a local board to investigate undocumented claims regarding prior medical examinations. Assuming that defendant was rejected by the Academy for alternating esotropia, the fact is that the ocular mobility and motility standards governing candidates for appointment to that institution are or may be disparate from those applicable to registrants for induction. Strabismus of any degree renders a candidate medically unfit for the United States

---

4. United States v. Brown, 438 F.2d 1115 (9th Cir. 1971); Briggs v. United States, 397 F.2d 370 (9th Cir. 1968).

Military Academy (AR 40–501, c. 6, 5–11c), while induction standards call for a strabismus of more than 40 units or 40 prism diopters, or strabismus of any degree accompanied by documented diplopia, in order to be disqualified for induction (AR 40–501, c. 2, 2–12h).

### The Supremacy Clause Claim

Apart from the medical claims, defendant contends that the participation of the United States in the Vietnam war constitutes a violation of treaty obligations allegedly incurred by the United States in Geneva in 1958. Thus, he submits, his act of refusing to submit to induction is lawful under the Supremacy Clause of the United States Constitution.

■■ Defendant does not, however, question Congressional power to provide for the draft *per se*. In prosecutions for failure to submit to induction, the Courts do not examine the purposes for which the executive employs the armed forces in foreign military operations. United States v. Hogans, 369 F.2d 359 (2d Cir. 1966) (per curiam); United States v. Bolton, 192 F.2d 805 (2d Cir. 1951) (per curiam.) Defendant's basic claim is not material here.

### The Authenticity of the Selective Service Records

Defendant further contends that the documents contained in defendant's selective service file which were offered into evidence by the government were not properly authenticated because the witness presented at trial as custodian of the file was not the proper custodian within the meaning of the law.

The government called as a witness Mrs. Kathryn Broadhurst, who has been employed by the Selective Service System as a legal assistant at the New York City Headquarters for approximately 28 years. This witness identified defendant's registration card as the official registration required by law upon or within five days after the registrant's 18th birthday. She also identified defendant's file as the official file maintained by defendant's local board in the regular course of its business; and she identified certain documents contained in the file, by local board time-stamp or by signature of persons identified on the documents as Selective Service System officials, and as made or received and maintained in the normal course of business. Defense counsel paid particular attention to the official minutes contained in the file, which the witness identified as to form, function and coverage by Selective Service regulations applicable to all local boards.

On further questioning by defense counsel, this witness testified that she had received and examined the file for the first time during the day of the trial and that her knowledge of its contents was based on that examination and on her knowledge of Selective Service System practices. She also acknowledged that the New York City Headquarters is separate from and not within the jurisdiction of the Headquarters for the State of New York. See 32 C.F.R. § 1604.13. It is the State of New York Headquarters that exercises jurisdiction over defendant's local board.

■ Official records from Selective Service files are admissible in a prosecution for violation of the Selective Service laws where they are identified as such by their custodian. United States v. Ward, 173 F.2d 628 (2d Cir. 1949); United States v. Rogers, 454 F.2d 601 (7th Cir. 1971); Lowe v. United States, 389 F.2d 51 (5th Cir. 1968); Pardo v. United States, 369 F.2d 922 (5th Cir. 1966). Whether or not the custodian made the records or whether or not he or she personally knows when and by whom they were made is not material. *Id.*

■ Under 32 C.F.R. § 1606.35(a), Mrs. Broadhurst is to be deemed a proper custodian for the purpose of producing the defendant's file in Court.[5] This regulation provides:

In the prosecution of a registrant or any other person for a violation of the

5. The federal Business Records Act does not apply to the custodianship question.

Military Selective Service Act of 1967, . . . all records of the registrant shall be produced in response to the subpena (sic) or summons of the court in which such production or proceeding is pending. *Any officer or employee of the Selective Service System who produces the records of a registrant in court shall be considered the custodian of such records for the purpose of this section.* (Emphasis supplied.)

■ This regulation has been held to enable various officers and employees of the Selective Service System, not merely those necessarily assigned to a defendant's Local Board, to provide a proper basis for "authentication by custody" (Wigmore, Evidence § 2159 [3d ed. 1940, Supp.1970]) pursuant to Rule 44(c), Fed.R.Civ.P., made applicable to criminal trials by Rule 27, Fed.R.Crim.P. *E. g.,* United States v. Rogers, 454 F.2d 601 (7th Cir. 1971) (Air Force Lt. Col. assigned to Illinois Selective Service in Chicago); Lowe v. United States, 389 F.2d 51 (5th Cir. 1968) (Deputy State Director); United States v. Holmes, 387 F.2d 781 (7th Cir. 1967), cert. denied, 391 U.S. 936, 88 S.Ct. 1835, 20 L.Ed.2d 856 (1968) (Douglas, J., dissenting) (Assistant Chief of Field Division of Illinois Selective Service); Pardo v. United States, 369 F.2d 922 (5th Cir. 1966) (Attorney-advisor for the Louisiana Selective Service Headquarters). The fact that defendant's file was compiled at a Local Board not within the jurisdiction of the Headquarters to which Mrs. Broadhurst is assigned does not vitiate her status as custodian. Yates v. United States, 404 F.2d 462, 466 (1st Cir. 1968), reh. denied, 407 F.2d 50 (1969) cert. denied, 395 U.S. 925, 89 S.Ct. 1781, 23 L.Ed.2d 242 (1969) (Deputy Director of Mass. Selective Service for file maintained in South Carolina local board); United States v. Brady, 4 SSLR 3126 (D.Mass. May 4, 1971) (Chief Warrant Officer assigned to Mass. State Headquarters for file maintained in Florida local board.).

The documents having been duly authenticated and identified as being made in the normal course of selective service business, they are fully admissible in this prosecution. *Cf.* United States v. Lloyd, 431 F.2d 160, 163 (9th Cir. 1970), cert. denied, 403 U.S. 911, 91 S.Ct. 2210, 29 L.Ed.2d 688 (1971).

The Court finds that the defendant, unlawfully and knowingly, did fail, neglect and refuse to submit to induction into the Armed Forces of the United States and that he accordingly is guilty of the offense charged in the Indictment herein.