**UNITED STATES of America,**
**Appellee,**

v.

**Robert J. CHORUSH, Appellant.**

**No. 666, Docket 72–2338.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 28, 1973.

Decided March 26, 1973.

---

Eugene N. Harley, New York City (Donald L. Doernberg, Jeremiah S. Gutman, Levy, Gutman, Goldberg & Kaplan, New York City, on the brief), for appellant.

Thomas R. Maher, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty. E. D. N. Y., L. Kevin Sheridan, Asst. U. S. Atty., on the brief), for appellee.

Before KAUFMAN, ANDERSON and MANSFIELD, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Robert Chorush, a conscientious objector exempt from military service, was convicted for willful failure to comply with an order of his local draft board to report on March 8, 1971, for alternative civilian work. On this appeal, Chorush presses several grounds for reversal, including the local board's refusal to afford him an interview with a medical examiner, as prescribed by then applicable Selective Service and Army Regulations. We agree that the board's failure to comply with these regulations compels a reversal of his conviction. Accordingly, we neither address nor decide the remaining claims.[1]

In our view, the error in this case was patent on the face of the record. At oral argument we asked the Assistant United States Attorney whether any consideration had been given to confessing error, a practice which not only conserves precious judicial resources but, in addition, where error is manifest, upholds the dignity of the prosecutor's of-

---

[1]. Chorush argues that upon submission of a claim of medical disqualification his draft board was required to reopen, or at least consider reopening, his classification, 32 C.F.R. § 1625.2; Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), and that failure to do so denied him guaranteed procedural rights, such as the right to appeal. He also argues that the board's refusal to grant him a physical examination violated Selective Service Regulation 32 C.F.R. § 1628.11(e). Finally, Chorush presents a rather novel constitutional claim, arguing that the board's refusal to assign him to civilian work in California, or to pay for his return trip to New York, infringed upon his right to travel, Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and violated the Due Process Clause of the Fifth Amendment. As indicated in the text, we do not reach these claims.

fice and contributes to the belief that the government's pursuit is not vengeance but justice, and that its advocacy, at all times, is in behalf of truth. The Assistant United States Attorney held to the view that no procedural irregularity had occurred and that Chorush's conviction should be affirmed. Thus, despite Chorush's conceded sincerity as a conscientious objector, and despite the fact that the war, which continues to cast its shadow across all of these cases, has happily become history, this matter must now be the subject of a written opinion of the court. We do not mean to imply for a moment that the government did not act in good faith. We urge only that the cause of justice is not always inconsistent with the art of compromise. This is particularly so when, as now, litigation flows into the appellate court at flood proportions, and when non-judicial solutions to difficult problems are not only feasible, but would bind deep wounds as well. It is only fair to note that the capable United States Attorney for the Southern District of New York, Whitney North Seymour, Jr., has advocated such views. See 1970-1971 Annual Report, United States Attorney for the Southern District of New York 33.

The facts in this case are quite straightforward. In January 1970, Chorush was classified 1-O by the National Appeals Board, as a conscientious objector (CO). On February 3, 1970, he was ordered to appear for a pre-induction physical, the first step in processing CO's for civilian work. On the day Chorush was required to report, February 16, he mailed a letter to his New York board stating that he was travelling throughout the United States, and that he had arranged with an office of the Selective Service System in Fresno, California, to have his physical examination transferred to that location. Chorush also wrote that he was under a physician's care for "debilitating venous varicosities" in his right leg. He requested an interview with a medical examiner, and enclosed a letter from his California physician, Dr. Robert J. Taub, docu-

menting his medical claim. The New York Board transferred Chorush's pre-induction physical to Fresno, but did not act upon his request for a medical interview. Thereafter, on March 2, 1970, Chorush again sent a letter to his New York board, which reads: "I hereby request to see a medical adviser. Enclosed is a copy of a letter from my physician indicating that I am physically unable to serve in the Armed Forces." The board totally ignored this request.

On April 1, Chorush was ordered to report for a pre-induction physical in Fresno, scheduled for April 14. On April 6, 1970, in a letter to both the Fresno and New York boards Chorush for the third time requested an appointment with a medical examiner, referring the boards to the applicable Selective Service regulation then in existence. Once again his request was ignored.

On April 14, Chorush reported to the Armed Forces Examining Station in Fresno for his pre-induction physical. He became overwrought, cried, and could not complete the examination. The board was informed that Chorush refused to cooperate with the Army Examiners.

The board, recognizing that Chorush was a legitimate conscientious objector, chose to treat him as being physically acceptable for civilian work and took steps to assign him to some form of alternative service. We need not narrate in detail the progress of this assignment process except to note that Chorush never received a medical interview and never was granted an army physical. Chorush refused to cooperate with the board in the selection of a work assignment and, ultimately, on February 24, 1971, Chorush was ordered by the board to report to New York on March 8, for assignment to a hospital in Poughkeepsie, New York. On February 26, 1971, two days after the work order was mailed, Chorush, in a letter to his board, requested a physical examination. He repeated his request on March 7, and stated that he did not have sufficient funds to pay for his return trip to New York.

On March 9, the New York State Director of Selective Service ruled that Chorush was eligible for alternate civilian service; accordingly, the board denied the request for a physical. On April 1, 1971, Chorush again wrote the board enclosing a letter from a psychiatrist, requesting a medical interview, a physical examination, and exemption from service. The request was denied. Chorush was indicted on June 28, 1972, on three counts,[2] including a charge of willfully failing to report for civilian work on March 8, 1971.

Although clarity and felicity of expression are hardly the hallmark of Selective Service and Army regulations, the regulations involved in this case present a happy exception to the rule. Indeed, little more is demanded of us in disposing of this appeal than a reference to the pertinent regulations, applicable at the time this matter came before Chorush's draft board. 32 C.F.R. § 1628.2 provided:

Registrants to Be Given Medical Interview

(a) . . . .

(b) Whenever a registrant who is in Class I–A, Class I–A–O, or Class I–O claims that he has one or more of the disqualifying medical conditions or physical defects which appear in the list described in section 1628.1, the local board shall order him to present himself for interview with the medical advisor to the local board at the time and place specified by the local board by mailing to such registrant a Notice to Registrant to Appear for Medical Interview (SSS Form 219).

The regulation clearly gives a registrant who makes a sufficient claim a right to a medical interview.[3] The regulation states that such an interview "shall" be ordered; it does not state that the medical interview "may" be ordered in the discretion of the board. The section 1628.1 list, referred to in the regulation, is one prepared by the surgeon general of the Department of the Army which enumerates various medical conditions or physical defects that disqualify registrants for service in the Armed Forces. At the time Chorush sought the medical interview, those who suffered from "Varicose veins, if more than mild . . . ." were exempt from service. AR 40–501, 2–19(f), and those registrants who made claims of disqualification for varicose veins, if more than mild, were entitled, *as of right*, to a medical interview.

The government argues that Chorush did not make out a claim for a disqualifying medical condition. We have been referred to cases which, the government asserts in its brief, articulate the rule of law that "the language used by the registrant in asserting such a claim [must] strictly conform to the language used in the applicable Army regulations." It is sufficient for us to note after reading these cases, United States v. Ehret, 431 F.2d 1146 (9 Cir. 1970); Benitez-Manrique v. Micheli, 439 F.2d 1173 (1 Cir. 1971); United States v. Lavin, 346 F. Supp. 76 (S.D.N.Y.1972), that they do not uphold any such principle of law. Indeed, common sense, at the very least, would indicate that particularly when a registrant's request for a medical interview is accompanied by supporting documentation submitted by a physician, it is best to allow the qualified medical expert to speak in his own words.

Chorush informed his local board, in a letter dated February 16, 1970, that he was under treatment for

---

2. Count 1 charged Chorush with willfully refusing to comply with board's order to report for civilian work. Count 2 charged Chorush with failure to maintain in his possession his Selective Service Classification Card (SSS Form 110). In Count 3 Chorush was charged with failure to maintain in his possession his Selective Service Registration Card (SSS Form 2). Counts 2 and 3 were dismissed at trial.

3. Section 1628.2(b) was revoked by Executive Order 11553 on August 26, 1970. In fairness to the district judge, we note that this regulation does not appear to have been brought to the attention of the court.

"debilitating venous varicosities in my right leg" and he requested a medical interview. We need not decide, in this case, whether such requests *must* be accompanied by *medical* documentation, since Chorush did, in fact, submit a letter from his physician, Dr. Taub, which more than adequately served to give notice to the board that Chorush suffered from venous varicosities that were "more than mild." Under the heading, "Physical Examination; Extremities," Dr. Taub wrote: "The left leg is normal. The right leg is carried at a wide angle and the range of motion of the right hip is normal. There are several large distended venous varicosities over the right lower extremity. . . ." Under the heading "Discussion," Dr. Taub wrote, "Mr. Chorush has symptomatic venous varicosities in his right leg. He was advised to use elastic support stockings while in the upright position and to avoid activity which would cause him to be on his feet for a long period of time. Should he have a thrombotic episode or if his symptoms become more severe, surgical correction may be necessary." On any plain reading of this letter, a case of venous varicosities that were more than mild was clear upon the surface of the communication.

■ The government argues that there is no support in the cases for ordering a medical interview when the registrant has been previously ordered for a pre-induction physical. One difficulty we have with this argument is that there is also no support in the cases for the position advanced by the government, and so the government concedes. Were there no difference between an army pre-induction physical and an interview with a medical examiner, or were the difference merely designed to provide options for administrative convenience, we might be more disposed towards the government's view. But the purpose of a medical interview, at least in part, is to afford an opportunity to a registrant to meet, on a face-to-face basis, with a physician away from the stresses of the induction center, for an evaluation of a claimed disqualifying condition. The personalized setting of the medical interview cannot be said to be of only limited benefit to the registrant. Accordingly, we are of the view that a draft board is without discretion to circumvent the requirements of 32 C. F.R. § 1628.2, which grants registrants the right to a medical interview, merely by scheduling the registrant for a pre-induction physical. *Cf.* United States v. Ford, 431 F.2d 1310, 1313 (1 Cir. 1970).

■ Failing in that argument, the government has directed our attention to 32 C.F.R. § 1628.4(e), which provides:

1628.4. Duties of the Local Board—

.    .    .    .    .    .

(e) If the local board determines that the registrant does not have a disqualifying medical condition or physical defect which appears in the list described in section 1628.-1, *or if the local board has any doubt* concerning the existence of any such condition or defect, the local board shall order the registrant to report for armed forces physical examination as provided in section 1628.11.

(emphasis supplied.)

The government argues that the board may have had a doubt concerning the existence of a disqualifying condition in Chorush's case and, therefore, the order for a pre-induction physical was appropriate.

No doubt, if 1628.4(e) really meant what the government says it means our conclusion that Chorush was entitled to a medical interview as of right, not subject to the board's discretion, would be seriously undermined. But, as is so often the case, the simple answer is that subsection (e) of § 1628.4 cannot be read in isolation from subsections (a), (b), (c) and (d). Consideration of the regulation in its entirety reveals that the "doubt" which is referred to in subsection (e) concerns the board's doubt about a registrant's physical condition *after* the registrant has met with the medical advisor, and *after* the medi-

cal advisor has submitted his evaluation to the board. The full text of 32 C.F.R. § 1628.4 appears in the margin.[4] The "Duties of the Local Board," which are the concern of § 1628.4, are clearly duties in connection with the ordering and processing of a medical interview, see 1628.4(a) and (b), and with determinations the local board must make "[a]fter completion of the medical interview," *see* 1628.4(c), (d) and (e). Subsection (c) instructs the board to determine, *after the medical interview and after a consideration of the findings and recommendations of the medical advisor* whether or not to order the registrant for a physical. Subsection (d) discusses procedures to be followed by the board when the board determines that the registrant has a disqualifying condition or defect. And subsection (e), the provision mistakenly relied upon by the government here, concerns procedures to be followed if the board is not convinced that the registrant has a disqualifying condition, or if it has any doubt on that score. Even the most creative manipulation of the art of statutory construction cannot turn the mandate of § 1628.4(e) into something other than instructions to the board to be followed, under certain conditions, *after the medical interview has been completed.*

In light of the foregoing discussion, we conclude that Chorush was entitled to a personal interview with the medical advisor to the local board. His draft board denied him that right and we cannot say that Chorush was not prejudiced by the board's conduct. The work order which appellant was found to have violated was issued subsequent to the board's denial of procedural safeguards to which he was entitled under

4. 1628.4 Duties of Local Board.—(a) When no medical advisor to the local board is available, the local board, to the extent that it is capable of doing so, shall make the examination, review, and finding provided for in section 1628.3.

(b) When a registrant is ordered to appear for medical interview the local board shall:

(1) Prepare an original and three copies of the Record of Induction (DD Form 47) and send the original to the medical advisor to the local board for the entry of his findings after the medical interview.

(2) Enter on the Classification Questionnaire (SSS Form 100) the date the Notice to Registrant to Appear for Medical Interview (SSS Form 219) was mailed to the registrant and the date upon which he is ordered to appear.

(c) After completion of the medical interview the local board shall determine, after considering the findings and recommendations of the medical advisor to the local board, whether or not to order the registrant to report for armed forces physical examination. The local board shall enter the date of the medical interview in the appropriate column of the Classification Record (SSS Form 102).

(d) If the local board determines that the registrant has a disqualifying medical condition or physical defect which appears in the list described in section 1628.1, the following action shall be taken:

(1) The local board shall file the original and one copy of the Record of Induction (DD Form 47) in the registrant's Cover Sheet (SSS Form 101) and forward two copies of the Record of Induction (DD Form 47) to the State Director of Selective Service who shall forward one copy to the Surgeon General, Department of the Army, Washington, D. C., and retain one copy.

(2) The local board shall review the classification of the registrant and if it finds under the provisions of Part 1622 of this chapter that he should be placed in some other class, reopen his classification and classify him anew and mail him a Notice of Classification (SSS Form 110).

(3) The local board shall cancel any Order to Report for Armed Forces Physical Examination (SSS Form 223) which it has mailed to the registrant and advise him in writing of such cancellation.

(4) The local board shall note in the "Disposition" column of the Physical Examination List (SSS Form 225), if the registrant's name appears thereon, that he has been found not qualified for service in the Armed Forces.

(e) If the local board determines that the registrant does not have a disqualifying medical condition or physical defect which appears in the list described in section 1628.1, or if the local board has any doubt concerning the existence of any such condition or defect, the local board shall order the registrant to report for armed forces physical examination as provided in section 1628.11.

applicable Selective Service and Army regulations. Accordingly, Chorush's conviction for violating that order must be reversed.