**UNITED STATES of America, Appellee,**

v.

**Gregory Crawford LAVIN, Appellant.**

**No. 519, Docket 72-2028.**

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1973.

Decided June 5, 1973.

M. James Spitzer, Jr., New York Civil Liberties Union, New York City, for appellant.

George E. Wilson, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., Peter L. Truebner and Richard J. Davis, Asst. U. S. Attys., New York City, on the brief) for appellee.

Before FRIENDLY, OAKES and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

Gregory Crawford Lavin appeals from a judgment of conviction entered June 9, 1972 following a nonjury trial in the Southern District of New York, Milton Pollack, *District Judge*, 346 F.Supp. 76 (S.D.N.Y.1972), for refusing to submit to induction into the Armed Forces of the United States, in violation of the Military Selective Service Act of 1967, 50 U.S.C. App. § 462(a) (1970), and 32 C.F.R. § 1632.14 (1972).

On appeal, appellant raises two claims of error, each of which was considered and rejected by the district court: (1) that his Selective Service file, which was the basis for the government's case, was not properly authenticated and therefore was erroneously admitted in evidence; and (2) that he was denied the required consideration by his local board of an alleged medical defect. For the reasons below, we affirm.

## I.

On February 26, 1970, appellant, at the time a college senior with a 2–S (full-time undergraduate college student) draft classification, was given a pre-induction physical examination. Pursuant to that examination, he was recalled for specialty consultations on June 1, 1970, at which time he was seen by a cardiologist and an ophthalmologist. The result of the examination and consultations was that he was found acceptable for induction into the Armed Forces.

During March and April of 1970, appellant had applied for reclassification as a conscientious objector. That claim was denied on August 20, the local board having concluded that he opposed only the war in Southeast Asia. He was reclassified from 2–S to 1–A (available for military service).

Following an unsuccessful appeal of that reclassification, appellant was ordered on December 14 to report for induction on December 28. He complied with that order to the extent of reporting to the Armed Forces Examining and Entrance Station in New York City where he was given another physical examination. He again was found acceptable for induction. When called upon to step forward, however, he refused to submit for induction.

On August 13, 1971, appellant was charged in a one count indictment with refusing to submit for induction. He waived jury trial. The case was tried before Judge Pollack on May 17 and 18, 1972. The government introduced appellant's Selective Service file and called a number of witnesses.[1] Appellant did not testify and offered no evidence. On June 9, the court filed a written opinion finding appellant guilty as charged. On August 16, he was sentenced to two years imprisonment, six months to be served in a jail-type institution and the balance suspended. A two year probation term was also imposed to commence upon his release from confinement, during which he is required to secure and hold employment of national importance, to the satisfaction of the Probation Officer. He has been enlarged on bail pending appeal.

Although appellant urged a number of legal grounds in the district court[2] in support of his motion for acquittal, all of which were carefully considered and rejected by Judge Pollack in his well reasoned opinion, appellant raises on appeal only the two claims of error stated above, to which we now turn.

## II.

Appellant's first contention is that the district court erred in admitting in evidence his Selective Service file on the basis of an authentication by an employee of the New York *City*, rather than the New York *State*, Selective Service System.

To prove the essential elements of its case, the government relied largely on appellant's Selective Service file. To es-

---

1. The government's witnesses were Kathryn Broadhurst, a legal assistant for the New York City Selective Service System, who authenticated appellant's Selective Service file; James A. Vopni, a United States Army Captain, who testified to appellant's refusal to submit to induction on December 28, 1970; Dr. Jay N. Joy, a member of the United States Naval Reserve Medical Corps, who had examined appellant on December 28, 1970 and found him fit for induction; and Dr. Emanuel Krimsky, an ophthalmologist, who testified as an expert witness with regard to the eye defect claimed by appellant.

2. In addition to the claims pressed here, appellant raised at trial such arguments as the failure of the local board to secure and consider the documentation of the rejection (for physical reasons) of his 1966 application for admission to the United States Military Academy; the illegality of the United States' participation in the war in Southeast Asia; and the omission of entries in certain boxes on the Medical Examination Report of appellant's induction physical, purportedly invalidating that examination.

tablish the required foundation for the file, the government called Mrs. Kathryn Broadhurst to authenticate it. She had been employed by the New York City Selective Service System for 28 years. Appellant, having registered originally in Peekskill, New York, was a registrant of a local board there which was included in the New York State Selective Service System. The applicable regulation clearly provides that the City system is not a component of the State system, the two being in all respects independent of each other.[3]

Mrs. Broadhurst identified appellant's registration card and other documents in the file as records which were made, received and kept in the regular course of business of the local board and she testified that it was the regular course of business of the local board to make, receive and keep such records. She admitted, however, that she had no personal knowledge of the documents in the file or of their genuineness; that her knowledge of the contents of the file was based on her examination of the file and her familiarity with Selective Service System practices; and that she had never seen the file prior to the afternoon of May 17, 1972, the date on which she appeared as a witness.[4]

Appellant argues from these facts that his file was never properly authenticated, because Mrs. Broadhurst, the witness presented at the trial as the custodian of the file, was not the proper custodian within the meaning of the law.

Under the applicable Selective Service regulation, 32 C.F.R. § 1606.35(a) (1972), "[a]ny officer or employee of the Selective Service System who produces the records of a registrant in court shall be considered the custodian of such records for the purpose of this section." (emphasis added). This provision broadens the class of persons who may authenticate such records under the federal statute and rules [5] so as to include officers and employees of the Selective Service System other than those with actual permanent custody over, and familiarity with, a registrant's records. See, e. g., Yates v. United

---

3. 32 C.F.R. § 1604.13 (1972).

4. We note in passing that this entire situation could have been avoided by only slightly greater attention on the part of the government to its case and to the calendar. Trial originally was set for March 21, 1972, but was adjourned at the government's request. A number of further delays followed. Finally, on May 17, appellant's counsel informed the court that appellant was en route from his home in upstate New York; and that, if trial could not begin before Judge Pollack either that day or the next, he would request that the case be assigned to another judge. Judge Pollack agreed to begin the trial immediately after the submission to a jury of another case then before him. Accordingly, the clerk called appellant's case on May 17 at 6:00 P.M. In the brief period available to it, the government was unable to transport an employee of appellant's local board to the courthouse. As the headquarters office for the City system was close to the courthouse, the government arranged for an employee of that office to be used for authentication purposes at the trial.

Particularly in view of appellant's stated willingness to go to trial on either May 17 or 18, we have no doubt that, even if appellant's counsel had refused to stipulate that Mrs. Broadhurst could testify as a custodian, the court would have granted a government request to adjourn the trial until the morning of May 18 to permit the attendance of an employee of appellant's local board. That surely would have been the preferable course.

In ruling as we do, we nevertheless suggest in the future that the government take all necessary steps to assure that the authenticating witness is able to comply with the spirit, as well as the letter, of the applicable rules of authentication.

5. The government records counterpart of the Federal Business Records Act, 28 U.S.C. § 1733(a) (1970), provides that books or records of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence of which the same were made.

Fed.R.Civ.P. 44(c) provides that such an official record may be evidenced by an official publication or by a copy attested by the officer having legal custody of the record or by his deputy.

Fed.R.Crim.P. 27 makes applicable to criminal cases the civil action provisions referred to above.

States, 404 F.2d 462, 466–67 (1 Cir. 1968), cert. denied, 395 U.S. 925 (1969).

The question presented here is whether an employee of the Selective Service System other than a person employed by the local board where the registrant's file was maintained may authenticate that file once it has been removed from a continuous chain of custody within the Selective Service System—here, removed solely for the purpose of placing it in the custody of the Assistant United States Attorney in charge of the criminal case. While the decisions that have dealt with the general problem of authentication of Selective Service records uniformly have adopted a liberal interpretation of Section 1606.35(a), none has faced this precise issue.

In *Yates*, the defendant originally had registered with a local board in South Carolina. When ordered to report for induction, he requested a transfer of induction to Boston where he then lived. Upon his refusal to submit to induction, he was indicted and tried in Massachusetts. At trial, his Selective Service file, which had been maintained in South Carolina, was offered in evidence by the government through the Deputy Director of Selective Service for Massachusetts, who testified that (1) the file was an official government record; (2) that he was the custodian of the file; and (3) that the material contained therein was made and kept in the ordinary course of Selective Service business. The Court of Appeals, in rejecting the defendant's contention that the jurisdiction of the witness was limited to Massachusetts whereas the file had been maintained in South Carolina, held, first, that under the regulation (Section 1606.35(a)) the Massachusetts Deputy Director was properly considered the

custodian of the file, he being an officer of the Selective Service System; and, second, that his status as custodian was not defeated simply because he had no personal knowledge of the substance of the file: "A custodian of records is not obliged to possess personal knowledge of the content of the file. He need only authenticate its source." 404 F.2d at 467.

Other cases involving similar facts have reached like results. In United States v. Rogers, 454 F.2d 601 (7 Cir. 1971), for example, the defendant's file was held properly authenticated by an Air Force Lt. Colonel assigned to the Illinois Selective Service System who had testified only that he had read the file and that it had been kept in the ordinary course of the System's business. Numerous other cases (including those cited below by Judge Pollack, 346 F. Supp. at 83) have sanctioned authentication by state supervisory personnel who lacked knowledge of the precise record-keeping methods utilized by the registrant's local board. E. g., United States v. Holmes, 387 F.2d 781, 783–84 (7 Cir. 1967), cert. denied, 391 U.S. 936 (1968); Pardo v. United States, 369 F.2d 922, 925–26 (5 Cir. 1966). Cf. United States v. Ward, 173 F.2d 628 (2 Cir. 1949) (clerk in Office of Selective Service Records).[6]

The rationale of these cases is unmistakable—that the peculiar administrative problems of the Selective Service System justify some relaxation of the strict rules of authentication in order to avoid undue disruption of the System with little or no benefit to the defendant. The wisdom of that policy is well exemplified here where the file gives no hint of unreliability and appellant does not challenge the regularity of anything

---

6. Moreover, a lengthy line of cases has established the admissibility of Selective Service files authenticated by a clerk of a registrant's local board, who, while having personal knowledge of the methods used, was not the maker of the records and lacked knowledge of the substantive accuracy of the contents. E. g., Nelloms v. United States, 399 F.2d 295, 296 (5 Cir. 1968), cert. denied, 393 U.S. 1071

(1969); Fults v. United States, 395 F. 2d 852, 854 (10 Cir. 1968); Doty v. United States, 218 F.2d 93, 96 (8 Cir. 1955); United States v. Borisuk, 206 F.2d 338, 340 (3 Cir. 1953). Cf. United States v. Rucker, 435 F.2d 950, 951 (8 Cir. 1971); United States v. Daniels, 429 F.2d 1273, 1274 (6 Cir. 1970) (both involving authentication by executive secretary for several local boards).

contained therein. In cases of this sort, therefore, the courts uniformly have sanctioned authentication of a file, as the regulation provides, by "[a]ny officer or employee of the Selective Service System" (emphasis added)—not limited to those employees assigned either to the particular local board where the registrant's file is maintained or to the state system with jurisdiction over that local board. We see no justification, under the circumstances of the instant case, for imposing a limitation upon the effect of the regulation which no court, so far as we are aware, has seen fit to impose.

This does not end our inquiry, however, for the chain of custody within the Selective Service System that was present in *Yates* and other cases [7] was interrupted here for a period of time. While we have not been informed exactly when the file was removed from appellant's local board, it is clear that the file was delivered to Mrs. Broadhurst on May 17, 1972 by the Assistant United States Attorney in charge of the case.

The theory behind the exception to the hearsay rule for records made in the regular course of business is "to permit the admission of business memoranda which impart a circumstantial guarantee of trustworthiness. The test is one of reliability." United States v. Hickey, 360 F.2d 127, 143 (7 Cir.), cert. denied, 385 U.S. 928 (1966). See Ross v. American Export Isbrandtsen Lines, Inc., 453 F.2d 1199, 1201 n. 2 (2 Cir. 1972). A critical element of "reliability" is a continuous chain of custody that is not likely to defeat that guarantee of trustworthiness. What must be demonstrated is that "the possibilities of misidentification and adulteration be eliminated, not absolutely, but as a matter of reasonable probability." Gass v. United States, 416 F.2d 767, 770 (D.C. Cir. 1969). In the final analysis, the determination of

whether that reliability exists must be left to the sound discretion of the trial judge. E. g., United States v. S. B. Penick & Co., 136 F.2d 413, 415 (2 Cir. 1943).

Here the district court was satisfied that the file retained that essential trustworthiness the absence of which would defeat its admissibility. On the particular facts of this case, we are unwilling to overturn that determination. In so holding, however, we place special reliance upon two factors: (1) that the only break in the Selective Service System's continuous chain of custody was when the file was in the possession of the Assistant United States Attorney in charge of the case—a break which, without more, does not suggest any increased likelihood of unreliability; and (2) that appellant has made no claim that the file as received in evidence contained any irregularities, and our examination of the file discloses none.

In short, while we do not condone the laxity with which the government approached the laying of a proper foundation for the introduction of appellant's file in evidence, neither the authentication by Mrs. Broadhurst nor the temporary possession of the file by the Assistant United States Attorney created sufficient doubt as to its reliability to render it inadmissible.

█ We hold that the district court did not err in admitting the file in evidence.

### III.

Appellant's second contention is that his local board violated both the Selective Service regulation and the requirements of due process when it failed to consider in advance of his pre-induction physical examination on February 26, 1970 two medical reports which had been submitted by appellant on February 20 and 26.

---

7. In *Yates*, the file was mailed from the South Carolina board to the Massachusetts board. In the intra-jurisdiction cases, the typical procedure is for the file to be delivered by the local board to the authenticating official who maintains possession until trial. See, e. g., Pardo v. United States, *supra*, 369 F.2d at 926 n. 6.

On February 20, six days before he was scheduled to report for a pre-induction physical, appellant submitted to his local board a letter from Dr. Philip Knapp, a New York ophthalmologist. The letter states that Dr. Knapp had examined appellant in 1966 and that he had shown an esotropia.[8] A second letter from Dr. Maurice Tannenbaum, submitted by appellant at the Armed Forces Examining and Entrance Station on the date of his physical, stated that he had shown "Alternating Esotropia since birth".[9] Each of these documents bears a stamp indicating that it was reviewed and considered by the local board on June 1, 1970. Appellant contends that he was entitled to have the letters considered by the local board in advance of his February 26 physical, and that the board's failure to do so violated both the applicable regulation and due process of law.[10]

Under the Selective Service regulation then in effect, "[w]henever a registrant . . . claims that he has one or more of the disqualifying physical defects which appear in the list [prescribed by the Surgeon General], the local board

shall order him to present himself for interview with the medical advisor." 32 C.F.R. § 1628.2(b) (1970) (revoked, 35 Fed.Reg. 13719, August 27, 1970). Included in the list in effect at the time appellant's letters were submitted was the following provision:

"2–12 *Eyes.* The causes for rejection for appointment, enlistment, and induction are

\* \* \*

h. Ocular mobility and motility

\* \* \*

(4) Strabismus of 40 prism diopters or more, uncorrectable by lenses to less than 40 diopters.

(5) Strabismus of any degree accompanied by documented diplopia."

Army Reg. 40–501, ¶ 2–12h(4), (5).

■ Appellant's medical letters indicated that he had shown alternating esotropia, a form of strabismus. Nothing in the letters, however, indicated that his condition was of the degree specified in ¶ 2–12h(4), or that his condition was

---

8. This letter, dated February 19, 1970, reads as follows:
    "TO WHOM IT MAY CONCERN:
    Gregory C. Lavin asked that I send a report of his eye findings of January 14, 1966 *to you.*
    The visual acuity in each eye is 20/20 for distance and near without correction and the near point of accommodation is thirteen centimeters in each eye. He shows an esotropia of 25 for distance and 30 for near with a double hypertropia. He has some peripheral fusion and gross steropsis on the Synoptophor. He had normal retinal correspondence on the above instrument and with the the [sic] after-image test.
        Sincerely yours,
    /s/ Philip Knapp
        Philip Knapp, M.D."

9. This letter, dated February 24, 1970, was from Dr. Maurice Tannenbaum of Peekskill, New York. The report contained therein was said to have been "[c]opied

from the records of S. Karash M.D. [deceased]." The report reads: "Alternating Esotropia since birth. Last vision Nov. 1964 20/20 OD, 20/20 OS. No fusion present."

10. Appellant also argues that the two medical letters were not considered by the board at its meeting on August 20, 1970 when it rejected his conscientious objector application and reclassified him from 2–S to 1–A. No evidence was offered in support of this claim. As the district court correctly held, it therefore was entitled "to presume that the board acted in compliance with the regulations and considered all the material in the file including all of defendant's medical papers. . . ." 346 F.Supp. at 80. See also Oestereich v. Selective Service System Local Bd. No. 11, 393 U.S. 233, 241 (1968) (Harlan, J., concurring) ; United States v. Harris, 436 F.2d 775, 777 (9 Cir. 1970), cert. denied, 402 U.S. 981 (1971).

accompanied by diplopia as specified in ¶ 2–12h(5). Since the medical information presented by appellant to the local board did not claim one of the disqualifying physical defects specified in the Surgeon General's list, the board was not required under Section 1628.-2(b) to refer him for an interview with the medical advisor. Cf. United States ex rel. Signorelli v. Malleck, 314 F.Supp. 153, 155 n. 4 (D.Conn.), aff'd per curiam on opinion below, 428 F.2d 823 (2 Cir. 1969), cert. denied, 397 U.S. 1008 (1970).

■ By the same token, submission of the medical letters did not require the local board to reopen appellant's file immediately upon request. The general rule, as stated in Mulloy v. United States, 398 U.S. 410 (1970), is that "where the registrant has set out new facts that establish a prima facie case for a new classification, a board must reopen to determine whether he is entitled to that classification." *Id.* at 415. Nevertheless, "the board need not reopen where the claim is plainly incredible, *or where, even if true, it would not warrant reclassification. . . ." Id.* at 418 n. 7 (emphasis added). Here the medical evidence did not establish a prima facie case for reclassification. The board was not required to reopen the file. Consideration of the claim was properly left in the first instance to the medical personnel at the examining station.[11]

We affirm the judgment of conviction and we commend Judge Pollack for his characteristically lucid, carefully reasoned opinion.

Affirmed.

11. The cases urged by appellant to the contrary involved new information presented in settings of far greater immediacy than that present here—e. g., subsequent to a 1–A classification and the passing of a preinduction physical, United States v. King, 455 F.2d 345 (1 Cir. 1972); United States v. Moyer, 307 F.Supp. 613 (S.D.N.Y.1969), or subsequent to a notice to report for induction, United States v. Jackson, 454 F.2d 821 (5 Cir. 1972); United States v. Ford, 431 F.2d 1310 (1 Cir. 1970); Helden v. Laird, 306 F.Supp. 1351 (S.D.N.Y.1969).