Stanley L. MALKIN, Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

Docket No. 00–6083.

United States Court of Appeals, Second Circuit.

Argued Oct. 11, 2000.

Decided March 12, 2001.

Jared J. Scharf, White Plains, New York, for Plaintiff–Appellant.

Karen B. Konigsberg, Assistant United States Attorney, (Mary Jo White, United States Attorney for the Southern District of New York, Jeffrey S. Oesteric her, Assistant United States Attorney, New York, NY, on the brief), for Defendant–Appellee.

Before: NEWMAN and KEARSE, Circuit Judges, and KORMAN, Chief District Judge *.

KEARSE, Circuit Judge:

Plaintiff Stanley L. Malkin appeals from a judgment entered in the United States District Court for the Southern District of New York following a bench trial before Whitman Knapp, *Judge*, dismissing his complaint seeking a refund of income taxes for the year 1979 on the ground that the statute of limitations had run prior to the assessment by the Internal Revenue Service ("IRS") of a deficiency. On appeal, Malkin contends principally that the district court should have excluded from evidence documents offered by the government to show that he had timely consented to an extension of the limitations period, and that, in any event, the evidence was insufficient to show such consent. For the reasons that follow, we disagree and affirm the judgment.

## I. BACKGROUND

The present controversy arises out of a tax loss claimed by Malkin on his federal income tax return for the year 1979 ("1979 return"), with respect to a certain investment. The IRS disallowed the loss based on its determination that the investment entity had generated fraudulent losses for its investors. In 1991, the IRS made an assessment against Malkin of taxes due for the 1979 tax year in the amount of $40,280. A settlement was negotiated, and Malkin paid that assessment. He commenced the present action principally seeking a refund of $20,040 of that amount, contending that the 1991 assessment was barred by the statute of limitations, which would have expired three years from the April 15, 1980 date on which Malkin filed his 1979 return, *i.e.*, on April 15, 1983.

The government contended that the assessment was timely because in March 1983, Malkin signed an IRS consent form, Form 872, in which he agreed to a one-year extension of the limitations period, and in September 1983 signed an IRS Form 872A, in which he consented to an indefinite extension. Malkin admitted having signed Form 872A in September 1983, but he testified that he recalled not having signed a Form 872 in March 1983. He thus contended that the statute of limitations had already run when he executed Form 872A in September 1983, and hence his execution of the latter form was ineffective to extend the limitations period.

---

* Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

It is undisputed that by the time of trial the IRS had lost or destroyed Malkin's entire file with respect to the year 1979; hence, it could not produce the Form 872 that it asserted Malkin had executed in March 1983. Accordingly, the government sought to show his consent through the introduction of secondary evidence. That evidence included (a) entries in two computer-generated transcripts of IRS records, admitted over Malkin's objection, indicating that the IRS had received a signed Form 872 from Malkin on March 16, 1983, and (b) testimony from three IRS employees as to standard procedures followed by IRS employees in order to verify that limitations periods have not expired.

IRS customer service supervisor Jennifer Gross testified that for each tax year for each taxpayer, the IRS maintains a separate account in an "integrated data retrieval system," or "IDRS." Any transaction relating to that account is routinely entered into the IDRS. The system uses numeric codes for the various types of transactions; the transaction code number used to indicate that an executed Form 872 has been received from the taxpayer is "560." The IRS can print two types of transcripts of the entries in a given account. One, characterized as a "literal" transcript, contains both transaction codes and a verbal description of each transaction; the other is a nonverbal transcript that contains the transaction codes, as well as additional numeric codes, but omits descriptions.

The IDRS literal transcript for Malkin's 1979 tax year showed several dozen entries; the fourth entry was a code 560, on "03-16-1983," with the description "ASSESSMENT STATUTE EXPIRATION DATE EXTENDED TO 04-15-1984." (Government Exhibit A.) Similarly, the nonverbal transcript for Malkin's 1979 tax year showed a code 560 entry, followed by the number "03161983" (Government Exhibit M), with additional codes including "075" (id.), which Gross explained indicated that Malkin's Form 872 had been received on the 75th day of 1983, which was March 16.

In addition, Robert A. Marino, a supervisory case manager in the IRS Newark district office, in which Malkin's 1979 return was examined, described the IRS's practices for securing and recording Forms 872 and 872A and the IRS's reliance on the computerized files. Marino also testified, inter alia, that in his nearly 27 years as an IRS employee in the Newark district, he had never heard of any case in which a transcript mistakenly reflected that a Form 872 had been received when in fact one had not, nor any case in which an IRS employee had backdated a consent form. Both Marino and Gross testified that the IRS computers have an automatic dating feature for documents whose receipt is recorded in the IDRS. Thus, it would be impossible for an employee to enter an untimely Form 872 into the computer system and to backdate the entry as if the form had been received earlier.

IRS employee Joan Carter testified that in 1988–1991 she was the appeals officer assigned to handle Malkin's case. Although Carter had no recollection of his case in particular, she testified that, in all cases, ensuring that the statute of limitations had not expired was of paramount importance. Thus, upon receiving Malkin's file she would have reviewed it in its entirety to be sure that he had executed waivers for the entire period through the date of her review. Had she not found such waivers, she would have reported that fact to her immediate superior and would not have negotiated a settlement.

Following the trial, the district court, in an opinion published at 2000 WL 37996 (S.D.N.Y. Jan.14, 2000), found that Malkin had timely consented to extensions of the limitations period and that the IRS's assessment thus was not barred by the statute of limitations. Finding it "highly improbable" that the IRS transcripts were erroneous, 2000 WL 37996, at *2, the court found that the government had satisfied its

burden of showing that Malkin furnished an executed Form 872 in March 1983, extending the limitations period, and it found that Malkin's testimony was insufficient to persuade the court to the contrary. The court stated, *inter alia*, that although it had no doubt that Malkin believed he was testifying truthfully when he said he affirmatively recalled that he had not signed a Form 872 in March 1983, the court found it impossible to conclude that the recollection, 16 years later, that he had not signed a particular form among the many that the IRS had sent him during the pertinent time period, was accurate:

> As one court has aptly noted, "The signing of [or failure to sign] one particular tax form among many is certainly a forgettable experience." *Cross[ v. United States*, No. 96–3243, 1998 WL 255054, at \*8 (10th Cir. May 19, 1998)]. In the case at bar, this truism is strengthened by various minor but significant inconsistencies between Malkin's testimony before us and his earlier less precise recollections.

2000 WL 37996, at \*1. Accordingly, the court dismissed Malkin's claim for a refund.

## II. DISCUSSION

On appeal, Malkin contends principally that the transcripts on which the government relied should have been excluded from evidence and that, in any event, the evidence was insufficient to show that he had executed a Form 872 in March 1983. We reject both contentions.

■ Obviously the best evidence of Malkin's execution of a Form 872 in March 1983 would have been the Form 872 itself. It was undisputed, however, that the IRS had lost or destroyed Malkin's entire file for the tax year 1979. There being no evidence that the unavailability of that file was anything other than inadvertent, it was well within the discretion of the trial court to allow the government to introduce reliable secondary evidence as to Malkin's

delivery of that form. *See* Fed.R.Evid. 1004(1).

Under the Federal Rules of Evidence, the hearsay rule, with certain exceptions not relevant here, does not forbid the introduction of "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... matters observed pursuant to duty imposed by law as to which matters there was a duty to report." Fed.R.Evid. 803(8). IRS supervisory personnel testified that attention to the statute of limitations was of paramount importance to the IRS and was a matter of repeated review. Plainly it was the duty of IRS employees to receive Form 872 statute-of-limitations waivers from any given taxpayer and to record them in the IRS data files for that taxpayer's pertinent year.

■ Although Malkin argued that the IRS records should be deemed unreliable, hypothesizing that an IRS agent who had failed to get him to sign Form 872 would have had a motive to forge his signature and make a false entry into the database, he presented no evidence that any such improper conduct had occurred. Further, according to the testimony of the government's witnesses, the automatic dating feature of the IRS computer system prevents the backdating of entries. The trial court plainly was entitled to credit the IRS employees' descriptions of the agency's operations; and we see no abuse of discretion, *see generally United States v. Lavin*, 480 F.2d 657, 662 (2d Cir.1973), in the court's ruling that the transcripts were sufficiently reliable to be received in evidence despite Malkin's speculations.

■ We also reject Malkin's contention that the evidence was insufficient to support a finding that he signed a Form 872 in March 1983. The district court's findings of fact following a bench trial "shall not be set aside unless clearly erroneous." Fed.R.Civ.P. 52(a). The fact that there was evidence to support an inference contrary to that drawn by the trier of fact

does not mean that the findings were clearly erroneous. *See Healey v. Chelsea Resources, Ltd.,* 947 F.2d 611, 618 (2d Cir.1991). It is within the province of the trier of fact to decide whose testimony should be credited, and we are not allowed to second-guess those credibility assessments. *See, e.g., Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Further, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. 1504; *see United States v. Yellow Cab Co.,* 338 U.S. 338, 342, 70 S.Ct. 177, 94 L.Ed. 150 (1949).

Here, the IDRS literal transcript of Malkin's account for his 1979 tax year contained the code "560," representing receipt from him of an executed Form 872, and the description "ASSESSMENT STATUTE EXPIRATION DATE EXTENDED TO 04–15–1984," along with the date "03–16–1983" (Government Exhibit A). The nonverbal transcript for Malkin for 1979 likewise contained the code "560," showed the date "03161983," and indicated IRS receipt on day "075" of the year (Government Exhibit M). In addition, Carter testified that she would have reviewed Malkin's file to be sure there was no statute-of-limitations problem and if the necessary waivers had not been on file she would not have negotiated the settlement. In light of this evidence, we see no clear error in the trial court's finding that on March 16, 1983, *i.e.,* prior to the expiration of the original statute-of-limitations period, the IRS received a Form 872 executed by Malkin, extending that period by one year. As Malkin conceded having consented, during that one-year period, to an indefinite extension of the limitations period, the IRS's eventual assessment was not time-barred.

## CONCLUSION

We have considered all of Malkin's arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.